THE STATE OF OHIO, APPELLEE, *v.* ABI-SARKIS, APPELLANT.

334

(Nos. 52405 and 54073—Decided
March 14, 1988.)

*John T. Corrigan,* prosecuting attorney, for appellee.
*Terrance P. Gravens* and *William J. Coyne,* for appellant.

DAVID T. MATIA, J. Defendant-appellant, Elias Abi-Sarkis, appeals from his convictions for the offenses of rape and gross sexual imposition and the denial of his motions for new trial.

On March 4, 1986, the appellant, a Catholic priest and the pastor of St. Maron's Church, Cleveland, Ohio, was indicted by the Grand Jury of Cuyahoga County for one count of rape in violation of R.C. 2907.02 and one count of gross sexual imposition in violation of R.C. 2907.05. The appellant was arraigned on March 7, 1986, at which time he entered a plea of not guilty to the indictment.

Trial was commenced on July 1, 1986 before the court after the appellant knowingly and intelligently waived his right to a trial by a jury. The evidence adduced at trial essentially involved the testimony of the alleged victim, Rose Sokolowski, pitted against the testimony of the appellant with regard to whether the sexual activities, which occurred on August 29, 1985, involved consenting parties or were the result of the appellant forcing or threatening the victim by force to submit to involuntary sexual conduct.

The State's Case

Prior to the date in question, August 29, 1985, Rose Sokolowski telephoned the appellant to arrange a meeting to discuss her husband's two applications for marriage annulments which were pending in the Catholic Church and other personal problems pertaining to her parents. Appellant made arrangements to discuss these matters with her during her lunch hour two days later. Upon their arrival at the rectory, they proceeded to the upstairs study. Thereafter she asked for something to drink and appellant gave her a glass of wine. Rose Sokolowski claims that the appellant then pulled her across his lap and started to kiss her and fondle her. While holding her wrists appellant stood up and with his other hand unbuckled and unzipped his pants and dropped his pants and shorts. Appellant turned her around so that she was kneeling in front of him with his hand on her head and told her to perform fellatio, which she did. During the course of this incident she asked appellant about his vows. After the incident, they left the rectory, and the appellant then drove her back to her place of employment. Further, she testified that neither before, during, nor after the incident was there any hue and cry.

The Defense

The appellant testified that on August 27, 1985, the alleged victim telephoned the rectory and left a message with the parish secretary. Pursuant to said message, the appellant contacted the alleged victim by telephone whereupon she expressed a

need for counseling. An appointment was scheduled for August 29, 1985. The appellant picked up the alleged victim at her place of employment. Upon arriving at the parish rectory the parties proceeded upstairs to an informal living room where the alleged victim's personal problems were discussed. The alleged victim became thirsty and requested a glass of wine; the appellant poured two glasses of wine and, before returning to the alleged victim, telephoned the parish secretary and informed her that "I'm upstairs if you need me for anything." The appellant returned and the alleged victim said: "I bet my husband or one of his men are watching me. Can we go to the study room?" Upon entering the study room, the parties sat on the loveseat and started hugging and kissing. She fondled his penis through his pants, and he fondled her breasts through her clothing. The alleged victim, with the assistance of the appellant, partially pushed the appellant's pants and elastic briefs down and proceeded to perform fellatio upon the appellant. The appellant testified that he never threatened her in any manner, never struck her, and never grabbed or forced her to perform the act of fellatio. His hands were behind his back when the act of fellatio was performed. His pants and elastic briefs were only pushed down far enough to expose his genitalia. He returned her to her place of employment; while returning, she expressed a desire for the appellant to dine at her home and meet her children. Appellant, as did the alleged victim, also testified that there was no evidence of hue and cry.

After a three-day trial, the trial court found the appellant guilty of the offenses of rape and gross sexual imposition on July 3, 1986. On July 23, 1986, the appellant filed his first motion for new trial and on July 29, 1986, the appellant filed a motion for merger of allied offenses pursuant to R.C. 2941.25. Said motions for new trial and merger of allied offenses were overruled by the trial court on August 1, 1986.

On July 30, 1986, the trial court, after receiving benefit of a presentence report, sentenced the appellant to imprisonment at the Chillicothe Correctional Institute for a term of five years to twenty-five years with regard to the offense of rape and a term of imprisonment for a definite term of one year, concurrent with the sentence for rape, with regard to the offense of gross sexual imposition. The appellant immediately appealed the convictions and sentences of the trial court on July 30, 1986.

On November 10, 1986, the appellant filed a motion for leave to file a second motion for new trial and on January 23, 1987, the trial court granted the appellant leave to file a second motion for new trial. The trial court, however, ruled that it was without jurisdiction to entertain the second motion for new trial on the basis that the appellant had perfected his appeal on July 30, 1986.

The appellant, by motion, requested this court to remand the appellant's appeal to the trial court for the sole purpose of permitting the trial court to entertain the motion for new trial. Said motion for remand was granted and the appellant's appeal was remanded for the sole purpose of a hearing. Upon hearing, the trial court again overruled the appellant's second motion for new trial and on June 29, 1987, the appellant filed an appeal from said overruled motion. The appellant's second appeal, with regard to the second motion for new trial, was consolidated with the present appeal for purposes of record, briefing, hearing, and disposition on August 10, 1987.

## I

The appellant's first assignment of error is that:

"The trial court erred in overruling the defendant's motion to merge the conviction of rape (R.C. 2907.02) with the conviction of gross sexual imposition (R.C. 2907.05) pursuant to R.C. 2941.25."

The appellant, in his initial assignment of error, argues that the trial court erred in overruling his motion to merge the conviction of rape and gross sexual imposition pursuant to R.C. 2941.25(A).

R.C. 2941.25, which deals with two or more offenses of similar import, states in part that:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, *but the defendant may be convicted of only one.*" (Emphasis added.)

This court, in *State* v. *Davis* (Sept. 24, 1981), Cuyahoga App. No. 42610, unreported, at 6-7, with regard to the application of R.C. 2941.25(A) to the offenses of rape and gross sexual imposition, stated that:

"The issue is whether the acts of gross sexual imposition, rape, and attempted rape were allied offenses of similar import arising from the same conduct. *Where a defendant commits multiple, independent acts of forcible sexual activity upon a victim, R.C. 2941.25(B) permits multiple convictions. State* v. *Shores* (Cuya. Cty. Ct. App., June 7, 1979), Unrep. Case No. 38850 (three acts of vaginal intercourse over three hour period support three rape convictions). *However, where the defendant's several acts constitute one uninterrupted assaultive episode without a separate animus as to each act, R.C. 2941.25(A) permits only one conviction. State* v. *Nash* (Cuya. Cty. Ct. App., Sept. 25, 1980),

Unrep. Case No. 41450 (defendant may not be convicted of two counts of gross sexual imposition in addition to rape where he had committed vaginal intercourse and two subsequent acts of fondling during one continuous attack spanning only fifteen to twenty minutes)." (Footnotes omitted and emphasis added.)

In the case *sub judice,* the record reveals that the appellant fondled the alleged victim immediately prior to the act of fellatio. We find that said fondling was incidental to the act of fellatio which constituted the offense of rape and that there were no separate animuses to said conduct. Therefore, R.C. 2941.25(A) prohibits the appellant's conviction of the offense of gross sexual imposition, and the trial court erred in overruling the appellant's motion for merger.

Therefore, the appellant's initial assignment of error is well-taken.

## II

The appellant's second assignment of error is that:

"The trial court erred in overruling the defendant-appellant's motion for reconsideration or, in the alternative, for new trial."

The appellant, in his second assignment of error, argues that the trial court erred in overruling his first motion for new trial. A review of the record in the case *sub judice,* however, reveals that the appellant has failed to argue in regard to this assignment of error.

App. R. 12(A), which pertains to assignments of error not separately argued, states in pertinent part that:

"* * * Errors not specifically pointed out in the record and separately argued by brief may be disregarded. * * *"

Thus, errors assigned but not specifically argued within the parties' briefs must be disregarded and not

considered. Cf. *State* v. *Johnson* (Dec. 20, 1984), Cuyahoga App. No. 48130, unreported; *Cleveland* v. *Arctic Home Insulation, Inc.* (July 9, 1987), Cuyahoga App. No. 52175, unreported.

The failure of the appellant to specifically argue in his brief as to the denial of his initial motion for new trial requires this court to disregard this assignment of error. Therefore, the appellant's second assignment of error is not well-taken.

### III

The appellant's third assignment of error is that:

"The convictions in the trial court should be reversed because they are against the manifest weight of the evidence and because the evidence supporting them was insufficient as a matter of law to prove the conviction beyond a reasonable doubt."

The appellant, in his third assignment of error, argues that the convictions of rape and gross sexual imposition were against the manifest weight of the evidence and that there was insufficient evidence to prove the elements of rape.

Generally, a reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132. The evidence and inferences reasonably drawn therefrom must be viewed in the light most favorable to the prosecution. *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717. In reviewing the legal sufficiency of the evidence to support a verdict by the trier of fact, it is the mind of the trier of fact, rather than the reviewing court, that must be convinced. *State* v. *Thomas* (1982), 70 Ohio St. 2d 79, 24 O.O. 3d 150, 434 N.E. 2d 1356. In applying this stan-

dard of review, the question of credibility of conflicting testimony and the weight to be accorded certain evidence are matters left primarily to the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212.

It is true that Sokolowski's testimony concerning the manner in which appellant managed to hold her wrists while undressing is somewhat improbable. We are mindful, however, that it is the mind of the trier of fact that must be convinced and not that of the reviewing court. *State* v. *Thomas, supra.* Sokolowski's testimony, if believed by the trier of fact, was itself legally sufficient to support appellant's convictions under the law of this state.

The more important issue in this assignment of error is the determination of whether appellant's convictions are supported by the weight of the evidence, especially in light of the reliability and credibility of the witnesses.

A reviewing court may conclude that a verdict is sustained by sufficient evidence as a matter of law, but may set aside such a verdict when the interest of justice weighs against that verdict. *Tibbs* v. *Florida* (1982), 457 U.S. 31, at 38, fn. 11; *State* v. *Robinson* (1955), 162 Ohio St. 486, 487, 55 O.O. 388, 388-389, 124 N.E. 2d 148, 149; *State* v. *Martin, supra,* at 175, 20 OBR at 218-219, 485 N.E. 2d at 720-721. When reviewing questions concerning evidentiary weight, this court sits as a "thirteenth juror" and makes its own independent review of the evidence and inferences derived therefrom, and assesses and weighs the credibility of each witness's testimony. While the discretionary power to reverse a judgment as against the manifest weight of the evidence and to grant a new trial should be exercised with caution, an appellate court should reverse when the evidence weighs heavily against

conviction. *State* v. *Martin, supra; State* v. *Woods* (1985), 25 Ohio App. 3d 35, 25 OBR 108, 495 N.E. 2d 465. Upon review of the evidence, we are convinced that appellant's convictions are against the weight of the evidence. This view is reinforced by the trial judge's statement that "the conflicting patterns factually presented makes [*sic*] this court's decision here particularly difficult and unpleasant."

We believe the record shows that appellant was the more credible witness. It is true that, at first, appellant denied having any type of sexual contact when questioned by the police and his church superiors. The obvious explanation was that he was ashamed and embarrassed by his disregard of his vows. Once appellant realized the seriousness of the charges against him and told his version of events, his story never wavered. Appellant's efforts to help Sokolowski's husband have two prior marriages annulled led to a friendship. Sokolowski became a frequent visitor at the rectory and ate lunch with appellant and his secretary on several occasions. As time passed, Sokolowski began to confide in appellant, discussing personal and family problems. On the day of the alleged rape, Sokolowski picked the time and place for their meeting. Appellant testified that his secretary was working that day and that he telephoned her to tell her that he would be in the upstairs office. The office door was never closed. The subsequent sexual encounter was purely mutual. This version has the ring of truth to it.

Sokolowski's version of events was substantially similar for the events leading up to the alleged rape. Her actions following the alleged rape, however, lack credibility.[1] She did not deny that she telephoned appellant on the night of the attack to thank him for helping her husband secure his annulments. She said that she did not bring up the alleged attack since her husband was standing near her when she called. On rebuttal, Edward Sokolowski testified that he was in another room and could not hear his wife's conversation.

Other features of Sokolowski's testimony, when considered with other evidence in the record independently established and uncontroverted, cast doubt on her believability. Sokolowski was a frequent telephone caller to appellant's rectory. Appellant's secretary testified that Sokolowski called so frequently they became friendly. Sokolowski admitted stopping at the rectory late on Friday night with a girlfriend. She stated that her husband had given her permission to do so. Her husband, Edward, however, was apparently unaware of where his wife was since he testified that he questioned her because she was late arriving home.

Sokolowski waited four days before telling her husband of the rape, and admitted calling appellant before that as part of a "dry run" to gauge his reaction to the fact that her husband had found out about the sexual encounter.

The Sokolowskis have had an admitted pecuniary interest throughout the investigation and trial. They did not immediately call the police; instead, they stated they wished to settle the matter through the church. Of the six long-distance calls the Sokolowskis placed to appellant's superiors in Brooklyn, New York, however, five were for less than three minutes' duration. When a complaint was sworn

---

[1] The inconsistencies that form the substance of the sixth assigned error were not considered in our weighing the credibility of the evidence since we may consider only the testimony that was before the trier of fact at trial.

against appellant, Sokolowski did not pursue the investigation and waived the complaint one month later. Sokolowski waited three months after the Maronite Order informed her that it was closing its investigation of the affair before renewing her police complaint. By the time the case went to trial, the Sokolowskis had retained private counsel in contemplation of a civil suit against appellant. Several days after the verdict was returned, the Sokolowskis filed a civil action against appellant and the Maronite Order.

Sokolowski's version of the rape raises questions of credibility. In fact, while the alleged attack was occurring, Sokolowski engaged appellant in a conversation concerning his vows and asked him if he had ever had past sexual encounters, all while supposedly "semi-shocked" by his actions. She said the conversation was prompted by her "curiosity" since he "acted like he's done this before." The manner in which appellant was supposedly able to hold Sokolowski's wrists and stand up from the couch, unbutton his trousers, push his trousers and underwear to his ankles, and simultaneously sit down and "twirl" Sokolowski from a seated position on the couch to a kneeling position in front of him lacks credibility.[2]

The trial judge seemed to give emphasis to the fact that appellant had arranged the meeting on that particular day. The evidence, however, clearly showed that *it was Sokolowski who called appellant,* seeking an appointment. Appellant was too busy to meet at Sokolowski's convenience, and another date was mutually agreed to. The court also believed it was impor-

tant that appellant knew there would be no one present at the rectory. The evidence showed that appellant's secretary and gardener were working that day; in fact, the secretary, who had free access to any room in the rectory, testified she was working immediately below the room where the alleged rape occurred. In fact, appellant had telephoned her to tell her he was upstairs with Sokolowski and could be reached in his study if he were needed. The door to the study was open, and there was ready access to the rooms on the second floor.

Our review of the record leaves us with considerable doubt that appellant committed the crimes for which he has been convicted. While we recognize the solicitude to be accorded the fact-finding function of the trier of fact, we will not hesitate to invoke our power to reverse and remand for a new trial when a defendant has been convicted on evidence as lacking in weight as that presented in this case. Thus, rather than risk the very real possibility that an innocent man be incarcerated for a crime he did not commit, the interests of justice require that we sustain the assigned error and remand this case for a new trial.

IV

The appellant's fourth assignment of error is that:

"The trial court committed prejudicial error in admitting the testimony of Edward Sokolowski when the state failed to comply with Criminal Rule 16(B)(1)(e)."

The appellant, in his fourth assignment of error, argues that the failure of the state to comply with Crim. R. 16(B)(1)(e) (witness names and addresses; record) by including the name

---

[2] When Sokolowski was confronted with the fact that appellant was holding her right hand with his right hand while the

alleged attack occurred, Sokolowski stated that "at one point" appellant managed to "quick switched hands."

of Edward Sokolowski on a witness list prevented the state from calling said witness as a rebuttal witness. The appellant specifically argues that he was unprepared to conduct a complete cross-examination of the witness and that said unpreparedness resulted in prejudice to the appellant.

This court, in *State* v. *Horn* (Jan. 29, 1981), Cuyahoga App. No. 42397, unreported, at 7-8, with regard to the issue of a rebuttal witness not specifically included in a witness list, held that:

"The State did have an obligation to disclose the name and address of the rebuttal witness if the defendant fulfilled the requirements of Rule 16(A) sufficiently to trigger the State's duty. However, because defendant failed to request a continuance, or an opportunity to voir dire the witness, or even a recess before his cross- and re-cross of the witness, the trial court did not abuse its discretion in failing to strike the testimony of the State's rebuttal witness, *State* v. *Weind* (1977), 50 Ohio St. 2d 224, 234-235; *State* v. *Phillips*, No. 40684 (8th Dist. Ohio, Feb. 22, 1980), unreported, at 7. Moreover, the defendant has not demonstrated on the record how the error injured him."

A review of the case *sub judice* reveals that although an objection was raised to the testimony of the rebuttal witness, the appellant failed to request a continuance, recess, or an opportunity to voir dire the rebuttal witness. In fact, the record clearly reveals that the cross-examination of the rebuttal witness was vigorous and complete. This court fails to find any prejudice befalling the appellant as a result of the cross-examination of the rebuttal witness.

Therefore, the trial court did not abuse its discretion in allowing the testimony of Edward Sokolowski as a rebuttal witness and the appellant's fourth assignment of error is not well-taken.

## V

The appellant's fifth assignment of error is that:

"The trial court committed prejudicial error when it *sua sponte* revisited the scene after closing arguments."

The appellant, in his fifth assignment of error, argues that the trial court erred in returning to the scene of the alleged rape for a second view after closing arguments and that the second view by the trier of fact prejudiced the appellant.

A review of the record reveals that the trial court, at the finish of closing arguments, indicated to the appellant and appellee that it would be returning to the church rectory for a second view of the scene of the alleged rape. The record indicates as follows:

"THE COURT: Thank you.

"Gentlemen, the Court is going to return to the Rectory. Is there a convenient time so that can be done, so that I can review the premises once again before I reach a verdict in this case, Mr. Coyne?

"MR. COYNE: We can make it available at the convenience of the Court, your Honor.

"THE COURT: The time would be within the hour?

"MR. COYNE: Sure.

"THE COURT: Shall we shoot for 12:30, to be at the Rectory at 12:30?

"MR. MARINO: Your Honor, do you want counsel to be there, or do you want to go by yourself?

"THE COURT: You may choose to, if you care to, or you may absent yourselves.

"MR. MARINO: For the State, we want to be there.

"THE COURT: Okay.

"Mr. Coyne?

"MR. COYNE: Maybe just Mr. Naffa will be there.

"(Thereupon the Court reviewed the scene, and a recess was had.)"

As can be seen, an opportunity was provided to the appellant and appellee to accompany the trial court upon the revisit to the church rectory. In fact, appellant's counsel indicated that: (1) the opportunity to revisit the rectory would be provided at the earliest convenience to the trial court; and (2) that Mr. Naffa, co-counsel for the appellant, would possibly appear for the appellant.

The Supreme Court of Ohio, in *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, established that a court of review will not consider a claim of error that was not raised in the lower court and not considered or decided by that court. The court specifically held that:

"This court need not address this proposition of law as the appellant failed to object to the jury instructions. He likewise failed to raise any of these issues in the Court of Appeals. This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State* v. *Gordon* (1971), 28 Ohio St. 2d 45, 276 N.E. 2d 243; *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83, 267 N.E. 2d 291; *State* v. *Davis* (1964), 1 Ohio St. 2d 28, 203 N.E. 2d 357; *State* v. *Glaros* (1960), 170 Ohio St. 471, 166 N.E. 2d 379. 'Any other rule,' this court stated in *State* v. *Driscoll* (1922), 106 Ohio St. 33, 138 N.E. 376, at 39, 'would relieve counsel from any duty or responsibility to the court and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel which enjoins upon counsel the duty to exercise diligence and to aid the court rather than by silence mislead the court into

commission of error.' See Crim. R. 30." *State* v. *Williams, supra,* at 116-117, 5 O.O. 3d at 101, 364 N.E. 2d at 1367.

A review of the case *sub judice* clearly reveals that the appellant failed to object to the second view of the church rectory even though an opportunity for objection was provided by the trial court. In fact, the record reveals that the appellant cooperated with the trial court by arranging a scheduled time for said second view of the church rectory.

The failure of the appellant to object timely to the second view of the church rectory and the acquiescence of the appellant to the second view of the church rectory prevents this court from reviewing the appellant's fifth assignment of error. Therefore, the appellant's fifth assignment of error is not well-taken.

## VI

The appellant's sixth assignment of error is that:

"The trial court erred in overruling the defendant-appellant's motion for new trial which was based upon newly discovered evidence."

The appellant, in his sixth assignment of error, argues that the trial court erred in denying appellant's motion for new trial pursuant to Crim. R. 33(A). In particular, appellant contends that various inconsistencies abound between the trial testimony of Rose and Edward Sokolowski and their deposition testimony taken by counsel for appellant in preparation for the defense of the Sokolowskis' pending civil suit against appellant. This contention has merit.

Crim. R. 33(A)(6) provides that a new trial may be granted when new evidence material to the defense is discovered.

In *State* v. *Petro* (1947), 148 Ohio St. 505, 36 O.O. 152, 76 N.E. 2d 355, the syllabus of the opinion stated the

rules for considering a new trial motion:

"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. * * *"

The second and third *Petro* guidelines are satisfied in this case since the newly discovered evidence first came to light after the trial, during deposition testimony taken in contemplation of a civil action.

The contradiction in Sokolowski's description of how the rape occurred goes to the issue of whether, in fact, there was force and, pursuant to the first *Petro* guideline, we think it "discloses a strong probability that it will change the result if a new trial is granted." *Id.* Certainly, the discrepancies are material. At trial, Rose Sokolowski testified that appellant was holding her wrists and facing her as he undressed. Her deposition testimony stated that appellant was definitely not facing her as he undressed, but he was still holding her hands. At trial, Sokolowski testified that appellant switched hands after he had swung her around to kneel in front of him; however, at deposition, she stated that he switched hands before he stood and removed his trousers.[3] Her contradic-

tion in describing how the incident occurred raises serious questions about what transpired that afternoon, especially in terms of the force used.

The trial judge believed it was important that appellant had arranged the meeting on the day in question. At trial, Sokolowski testified that she telephoned appellant a few days before August 29 to arrange an appointment to see him. However, at her deposition, she testified that the arrangements for the August 29 meeting were made two weeks in advance. Moreover, Sokolowski stated at trial that she made the appointment to discuss a personal problem. However, at her deposition she stated she telephoned appellant to check on the progress of her husband's annulments. During the course of that telephone call, she mentioned that she would no longer be working at her place of employment after the first week in September. She said she told him because he was a regular customer. This prompted appellant to invite her to lunch. Edward Sokolowski testified at his deposition that his wife left her place of employment after the rape because she was embarrassed by the rape and could not cope with work.

The trial judge also was swayed by the fact that appellant chose to meet in the upstairs rooms of the rectory. Sokolowski testified to the fact. However, in her deposition, she said that appellant asked her if she wanted to go to his downstairs office, but she said no. Appellant then gestured toward the staircase. Sokolowski admitted at her deposition that she preferred to go upstairs.

This evidence is not cumulative, and we believe there is a strong proba-

---

[3] At a later point in her deposition, when confronted with the obvious physical improbabilities of the right hand/left hand distinction, Sokolowski, apparently confused with her own version of events, stated she could not remember which hand he used since "it all happened so fast."

bility that it would change the result of a new trial, especially in light of the trial judge's belief that appellant had motive and opportunity. Thus, while the evidence tends to impeach and contradict the evidence previously presented, it does so with regard to the key issues in the case: consent, force, opportunity and motive. Accordingly, the trial court abused its discretion in denying appellant's motion for a new trial. The sixth assigned error is well-taken.

Therefore, the judgment of the trial court is reversed and the matter is remanded for a new trial.

*Judgment reversed and cause remanded.*

PATTON, P.J., and DYKE, J., concur.