### State v. Gover
*[Cite as 2 AOA 26]*

*Case No. C-880780*
*Hamilton County, (1st)*
*Decided April 18, 1990*

*R.C. 2911.31*

*Arthur M. Ney, Jr., Prosecuting Attorney, David L. Prem, Esq., and Steven Tolbert, Esq., 420 Hamilton County Courthouse, Court and Main*

*Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee,*

*Julie A. Deardorff, Esq., 3307 Clifton Avenue, Cincinnati, Ohio 45220, for Defendant-Appellant.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, Ohio, the transcript of the proceedings, the assignments of error, and the briefs and arguments of counsel.

Defendant-appellant Anthony Gover appeals from the judgment of the court below convicting him of safecracking. For the reasons which follow, the judgment of the trial court is reversed.

The events leading to the arrest of the defendant occurred on September 13, 1988. On that date the defendant entered a restaurant named Smackwater Jacks. As the general manager of the establishment (Michael Lee Mastruserio) approached the door, the defendant turned and immediately exited. Later that evening, Mastruserio noticed the doors to the kitchen open and observed the defendant moving along the side of the bar in a crouched position. Apparently, the defendant then stood up and walked out of the front door.

Mastruserio, suspicious of the defendant's behavior and of the fact that the defendant's pockets were bulging, followed him outside and asked him to stop. The defendant did not comply with this request, but instead fled the scene. Mastruserio pursued the defendant for about two blocks. He then observed a police car in the area and signalled for its assistance. Mastruserio advised the officer that the defendant may have committed a crime at the restaurant. The officer joined in the pursuit and spotted the defendant running through a park. As the officer pulled his cruiser alongside the fleeing defendant, he observed the defendant emptying his pockets. The officer then maneuvered his car in front of the defendant to block his path. The defendant stopped and was apprehended at that time.

The officer returned to the area where the defendant had allegedly discarded the items and found coins, costume jewelry, foreign currency and the defendant's identification card. The officer showed these items to Mastruserio, who identified them as property utilized as part of a display in a private dining area at the restaurant. Apparently, the items were kept in

a safe which was housed within a vault. The door of the safe was open and bolted to the wall of the vault. A clear plexiglas cover was placed on the front of the safe so the items contained inside could be seen. When Mastruserio and the police returned to the restaurant, they discovered that the plexiglas cover on the safe was broken and that various items contained inside were missing.

The defendant was charged in an indictment with one count of safecracking. The defendant entered a plea of not guilty to the charge. During the trial, the defendant's motion for acquittal pursuant to Crim. R. 29 was overruled. At the conclusion of the proceeding, the jury found the defendant guilty as charged and he was sentenced as appears of record.

In his first assignment of error, the defendant alleges the trial court erred in overruling his motion for acquittal. We agree.

Pursuant to R.C. 2911.31, in order to establish the crime of safecracking, the state must demonstrate that the defendant, with purpose to commit an offense, knowingly entered, forced an entrance into, or tampered with a vault, safe, or strongbox. The defendant argues that the state failed, as a matter of law, to establish the existence of a "vault" or "safe" as those terms are set forth in the safecracking statute.

The court in *State v. Aspell* (1967), 10 Ohio St. 2d 1, 225 N.E.2d 226, entertained a similar task of determining the scope and meaning of the terms "vault" and "safe". It stated, *supra* at 3-4, 225 N.E.2d at 228:

"One pictures a safe as an iron or steel depository for the safekeeping of assorted valuables and a vault as a large arched or square structure located in a protected area such as an underground basement and built of stone, bricks, concrete or steel, where a variety of valuables are usually stores."

Further, "vault" has been defined as "a room for the safekeeping of valuables and commonly built of steel," while "safe" has been described as "a place or receptacle to keep articles safe * * * [or] a metal box or chest sometimes built into a wall or vault to protect money or other valuables against fire or burglary." Webster's Third New International Dictionary (1981) 2536, 1998.

In the case *sub judice,* it is undisputed that neither the vault nor the safe was utilized for the protection or safekeeping of valuables. Rather, Mastruserio asserted in his testimony at trial that the vault was used as a private dining area, while the safe served as a case to display

items of little or no worth. Based on the definitions above and the factual background of the instant case, we are not persuaded that the state did or could establish the necessary elements that constitute the crime of safecracking as set forth in R.C. 2911.31

Accordingly, since reasonable minds could only conclude that the state failed to prove each material element of the crime of safecracking beyond a reasonable doubt, see *State v. Bridgeman* (1978), 55 Ohio St. 2d 261, 381 N.E.2d 184, the defendant's first assignment of error is sustained.

In his second assignment of error, the defendant alleges the trial court erred in refusing to read his proposed instructions to the jury. This assignment is overruled.

In determining whether a charge prejudicially affects the defendant's right to a fair trial, the charge must be considered in its entirety. *City of Cleveland v. Barnes* (1984), 17 Ohio App. 3d 30, 477 N.E.2d 1237.

Our review of the transcript in this case reveals that the trial court gave the jury the standard boiler-plate instruction on safecracking as set forth in Ohio Jury Instructions. It is our opinion that the instructions, as read to the jury, were essentially the same as those proffered by the defendant. Thus, we conclude that the defendant suffered no prejudice and that the trial court did not abuse its discretion in instructing the jury on the crime of safecracking.[1] See *State v. Oswalt* (Jan. 27, 1982), Hamilton App. No. C-810134, unreported.

In his final assignment of error, the defendant alleges that his conviction of safecracking was contrary to the manifest weight of the evidence.

It is apparent from our response to the defendant's first assignment of error that the state failed to prove a material element necessary to demonstrate the crime of safecracking: to wit, the existence of a vault or safe. Thus, we must necessarily conclude that the judgment is also contrary to the manifest weight of the evidence.

Based upon our disposition of the first assignment of error, the judgment of the trial court is reversed and the defendant is discharged from further prosecution of the charge lodged against him.[2]

*Judgment reversed.*

DOAN, P.J., and UTZ, J., Concur.

GORMAN, J., Dissents.

GORMAN, J., Dissenting.

R.C. 2911.31 provides that "no person, with purpose to commit an offense, shall knowingly enter * * * any * * * safe * * *." The majority acknowledges that the element "safe" is not defined in the statute, and that the object the defendant entered possessed the physical properties of a safe. However, the majority concludes, *a fortiori*, that because the safe was used as a display case, as a matter of law, it is not a "safe" for purposes of R.C. 2911.31.

Lacking a statutory definition of "safe," it was the jury's prerogative to determine, within the common usage and understanding of the term, whether the state proved this element beyond a reasonable doubt. The majority incorrectly concludes that the evidence as a matter of law was insufficient. The test for a court in reviewing sufficiency is simply to determine whether the state's evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St. 2d 169, 172, 383 N.E.2d 132, 134. It is the mind of the trier of fact and not of the reviewing court that must be convinced. *State v. Thomas* (1982), 70 Ohio St. 2d 79, 434 N.E.2d 1356.

Furthermore, because the trial court submitted the issue to the jury for its determination upon an instruction which the majority has not found to be erroneous, the verdict was not against the manifest weight of the evidence. Assuming that the jury followed the trial court's instruction, the record does not demonstrate that the jury lost its way or created a miscarriage of justice. See *State v. Abi-Sarkis* (1988), 41 Ohio App. 3d 333, 535 N.E.2d 745. I would affirm the verdict and judgment of the trial court.

---

[1] We find only that the instruction, as given, was appropriate for the crime of safecracking, and not that the state established that the defendant committed the crime of safecracking.

[2] We do not consider our disposition of the third assignment of error to be violative of Section 3, Article IV, Ohio Constitution, which provides that reversal of a jury verdict on the weight of the evidence by a court of appeals requires the concurrence of all three judges hearing the cause, because our reversal of the judgment and discharge of the defendant are based solely upon our resolution of the first assignment of error regarding the insufficiency of the evidence.