JOURNAL ENTRY AND OPINION
In 1989, a Cuyahoga County Common Pleas jury convicted defendant-appellant Leo Gillespie of two counts of rape and one count of gross sexual imposition. The court sentenced Gillespie to prison terms of seven to twenty-five years for each rape conviction and to an eighteen-month term for the gross sexual imposition conviction, with the sentences to run concurrently. The judgment was affirmed on direct review in State v. Gillespie
(Sept. 27, 1990), Cuyahoga App. No. 57568, unreported. The Supreme Court of Ohio declined to accept the matter for further review. State v. Gillespie (1991), 57 Ohio St.3d 709. On September 20, 1996, Gillespie commenced this proceeding by filing a petition for postconviction relief pursuant to R.C. 2953.21. On January 4, 1999, the trial court issued its findings of fact and conclusions of law that denied Gillespie's petition for postconviction relief.
Gillespie's appeal presents four assignments of error. Gillespie's first assigned error complains that he should have been afforded an evidentiary hearing on his petition. His second, third, and fourth assigned errors contend that his petition stated valid claims for relief. We conclude that Gillespie's appeal is not well taken. We will first address the validity of Gillespie's claims for relief and then address the need for an evidentiary hearing.
Gillespie's second assignment of error states:
 II. THE TRIAL COURT VIOLATED GILLESPIE'S RIGHT TO DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS BY DISMISSING GILLESPIE'S FIRST CLAIM FOR RELIEF WITHOUT A HEARING.
Gillespie contends that his conviction was not based on substantial credible evidence, and the conviction, therefore, violated due process of law. This assignment of error is not well taken.
At trial, Gillespie's victim testified that she first met Gillespie, identifying himself as "Jim," at a nightclub on Friday, April 22, 1988, and then saw him again at a different nightclub on Tuesday, April 26, 1988. After several dances, during which the victim resisted Gillespie's advances, Gillespie and the victim left separately at closing time but, when Gillespie said he forgot where he parked his vehicle, the victim offered to drive Gillespie around the parking lot to locate the vehicle. Upon arriving at his vehicle, Gillespie and his victim talked for a time until, according to the victim, Gillespie grabbed the victim by her hair, opened her dress and fondled her breasts. The victim testified that Gillespie then exposed himself and forced the victim to perform oral sex on him. Gillespie then tore the victims's pantyhose and engaged in vaginal intercourse without her consent. Gillespie then left in his own vehicle. When Independence police first contacted Gillespie, he denied that he was even at the nightclub on the night in question. But by that time, the police had already obtained a copy of the credit card receipt corroborating Gillespie's payment for the drinks the victim said he purchased for them at the nightclub.
For his part, Gillespie denied having met the victim at any time before April 26, 1988. At trial, Gillespie acknowledged that he danced and kissed the victim on the night in question and that they conversed for a period of time in her car after the nightclub closed. Gillespie maintained that when he divulged that he was married, the victim became angry and they parted company without further incident.
For his petition seeking postconviction relief, Gillespie relied in part on records filed in connection with the victim's application for reparations in the Ohio Court of Claims. In particular, the victim apparently sought reimbursement for three treatments involving mental health services rendered by Sharon Abegg, M.D., in October, November, and December 1988. But Dr. Abegg's response to an investigation of the reparations claim stated: "I know of no crime pt. was involved in. She did not mention this in our several therapy sessions. I can't comment!" When asked to document her medical fees, Dr. Abegg indicated: "No treatment for injury by crime!"
Witness credibility having been a critical issue at his trial, Gillespie insists that the evidence he submitted with his petition for postconviction relief demonstrated that the victim was not credible and that he was unconstitutionally convicted on insubstantial, unreliable evidence." We cannot agree.
Even if we accept Gillespie's evidence at face, value, the fact that the victim apparently did not report the crime to Dr. Abegg does not disprove that the crime occurred. In any event, Gillespie's petition for postconviction relief challenges the victim's credibility and thus contests the evidence used to convict him. The adequacy of the proof upon which Gillespie was convicted, however, was an issue that had to be determined at trial and, if still in issue, to be challenged by direct appeal based on the trial court record.
Ohio law establishes that issues which can be determined in the underlying criminal case cannot later be considered in postconviction proceedings under R.C. 2953.21. In State v. Perry
(1967), 10 Ohio St.2d 175, the court's syllabus states, in part:
 7. Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 et seq., Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.
 9. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. (Emphasis in original.)
See also State v. Szefcyk (1996), 77 Ohio St.3d 93. Consequently, claims directed to the sufficiency or weight of the evidence at trial are matters to be decided in the underlying criminal proceeding and are not cognizable in postconviction proceedings. See State v. Carballo (Feb. 2, 1998), Madison App. No. CA97-05-018, unreported; State v. Zuern (Dec. 4, 1991), Hamilton App. No. C-900481, C-910229, unreported.
Gillespie insists that his new evidence contests the quality of the state's proof as opposed to the mere quantity. That distinction, however, still does not furnish grounds for postconviction relief. Under R.C. 2953.21, such relief is reserved for judicial review of constitutional error occurring in the underlying criminal proceeding. See State v. Powell (1993),90 Ohio App.3d 260, 264. See also State v. Lester (1975), 41 Ohio St.2d 51,54-56; State v. Perry, supra. The new evidence Gillespie now offers to challenge the victim's credibility and cast doubt on his guilt does not by itself implicate any constitutional error for which collateral relief may be granted.[1] See Herrera v. Collins, (1993), 506 U.S. 390
(freestanding claim of "actual innocence" does not provide grounds for federal habeas relief); State v. Watson (1998),126 Ohio App.3d 316, 323 (claim of "actual innocence" does not constitute substantive ground for state postconviction relief).
In this case, Gillespie has not shown that an independent constitutional violation occurred in the underlying criminal proceeding which prevented Gillespie from placing this evidence before the jury. The notations attributed to Dr. Abegg do not establish an independent constitutional violation and, therefore, cannot furnish grounds for postconviction relief under R.C.2953.21. Accordingly, Gillespie's second assignment of error is overruled.
Gillespie's third assigned error contends:
 III. THE TRIAL COURT VIOLATED GILLESPIE'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS BY DISMISSING GILLESPIE'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM WITHOUT A HEARING.
Gillespie asserts that his trial counsel rendered constitutionally deficient representation. Under Ohio law, a properly licensed attorney is presumed competent. Vaughn v.Maxwell (1965), 2 Ohio St.2d 299. To overcome that presumption, a postconviction petitioner must submit evidentiary documents containing sufficient operative facts which demonstrate (1) the trial counsel's performance was objectively unreasonable and (2) but for counsel's errors, there exists a reasonable probability that the result of the trial would have been different. SeeStrickland v. Washington (1984), 466 U.S. 668; State v. Bradley
(1989), 42 Ohio St.3d 136; State v. Jackson (1980), 64 Ohio St.2d 107
. In this case, Gillespie's petition faults his trial counsel on four separate grounds. Having considered each, we find none to have merit.
Gillespie first criticizes his trial counsel for failing to call witness Karen Tomcho, who would have testified she was with Gillespie on April 22, 1988, the date the victim said she first met Gillespie. But "it is well established that counsel's decisions concerning which witnesses to call at trial fall within the realm of trial strategy and tactics and generally will not constitute ineffective assistance of counsel." State v. Smith
(1996), 115 Ohio App.3d 419, 426. See also State v. Oliver
(1995), 101 Ohio App.3d 587 (decision whether to call defense witness is within ambit of trial counsel's strategy); State v.Hunt (1984), 20 Ohio App.3d 310 (decisions regarding calling of witnesses are within purview of defense counsel's trial tactics). Gillespie's evidence does not show that his trial counsel unreasonably refrained from calling this witness or that the outcome would have been different had the witness testified. Assuming that the witness was with Gillespie for some period of time on April 22, 1988, that does not prove that Gillespie did not also meet the victim on April 22, 1988 and assuredly would not disprove the conduct that allegedly occurred in the early morning of April 27, 1988. This contention is therefore without merit.
Gillespie next faults his trial counsel for failing to cross-examine the victim on a medical record notation indicating the victim's current medications included 15 milligrams of Valium three times a day or on an alleged inconsistency between the victim's trial testimony and her initial description of the incident to the police. Yet there can be little doubt that the matters on which a witness is cross-examined are likewise within the realm of counsel's trial strategy and tactics. See State v.Otte (1996), 74 Ohio St.3d 555, 565. Gillespie has not shown that his trial counsel's cross-examination of the witness was objectively unreasonable, and our own review of the transcript convinces us that the victim was subjected to a vigorous and thorough cross-examination by Gillespie's trial counsel. Gillespie presented no facts to show that his counsel's cross-examination was deficient or that the outcome would have been different. This contention accordingly fails.
Gillespie proceeds to criticize his trial counsel for failing to advise Gillespie on the strength of the State's evidence. Lacking that knowledge, Gillespie supposedly rejected a plea bargain offered by the State and proceeded to trial. The trial record, on the other hand, reflects that just before trial commenced the court addressed Gillespie and said:
 THE COURT: [T]he prosecutor and your lawyer have had some discussion about a potential resolution of the case, short of a trial, and there as [sic] been no real offer, other than the indictment from the prosecutor, but they had indicated that they're willing to discuss this, if there is any kind of a proposal. They would see if they could get it approved.
 As I understand it, when this was presented to you, you indicated that you wanted to maintain your not guilty plea, and you were not interested in entering into any plea negotiations, not withstanding [sic] what the prosecutor claims the evidence would be; am I right?
MR. GILLESPIE: Yes, Your Honor.
(Tr. 5.) For his petition seeking postconviction relief, Gillespie's affidavit contains only conclusory allegations that his trial counsel failed to advise him of the "strength" of the State's case, but nothing controverts the record which shows that Gillespie himself made the decision to forgo plea negotiations and proceed to trial. Gillespie again has not shown that his trial counsel's representation was deficient.
Finally, Gillespie faults his trial counsel for filing a post-verdict motion for acquittal that sought a reduction on the two counts charging rape to the lesser offense of sexual battery. Gillespie contends this argument contradicted Gillespie's trial stance. Inasmuch as this contention could have been raised by Gillespie's new counsel on direct appeal, res judicata bars Gillespie from raising it now. See State v. Cole (1982), 2 Ohio St.3d 112, syllabus; State v. Perry, supra. In any event, this post-trial motion after the jury returned its verdict plainly had no effect on the jury's verdict. Moreover, Gillespie has not shown that it was objectively unreasonable for his trial counsel to seek a reduction of the charges.
Accordingly, Gillespie's third assignment of error is without merit.
Gillespie's fourth assignment of error submits:
 IV. THE TRIAL COURT VIOLATED GILLESPIE'S RIGHT TO DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS BY DISMISSING GILLESPIE'S THIRD CLAIM FOR RELIEF WITHOUT A HEARING.
Gillespie contends that the State failed to disclose (1) the victim's medical record reflecting her use of Valium or (2) the victim's initial statement to police, thereby depriving Gillespie of his right to exculpatory information under Brady v. Maryland
(1963), 373 U.S. 83. The assignment of error is not well taken.
Nothing in the record indicates that exculpatory information was withheld from Gillespie's trial counsel. Indeed, the trial record reflects that Gillespie's counsel was afforded the opportunity to review the victim's written statement to police pursuant to Crim.R. 16, with no material inconsistencies discovered. The record further reflects that Gillespie's trial counsel cross-examined the victim on statements contained in her medical records. Nor has Gillespie shown a reasonable probability that the outcome would have been different had his trial counsel attempted to pursue the arguments Gillespie now advances. SeeState v. Watson (1998), 126 Ohio App.3d 316. Accordingly, Gillespie has not presented any operative facts showing substantive grounds for relief and his fourth assignment of error is therefore overruled.
As his first assignment of error, Gillespie says:
 I. THE COURT BELOW VIOLATED GILLESPIE'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS, AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS, BY DISMISSING GILLESPIE'S PETITION NOTWITHSTANDING THAT HE PRESENTED SUBSTANTIVE GROUNDS FOR RELIEF SUFFICIENT TO WARRANT AN EVIDENTIARY HEARING UNDER R.C. § 2953.21(C) AND (E).
Gillespie asserts that the court erred in dismissing his petition without first holding an evidentiary hearing. In Statev. Calhoun (1999), 86 Ohio St.3d 279, paragraph 2 of the court's syllabus states the conditions that excuse a court from holding such a hearing:
 Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.
Having determined that Gillespie's petition for postconviction relief failed to demonstrate that Gillespie set forth sufficient operative facts to establish substantive grounds for relief, we conclude that the court was not obliged to hold an evidentiary hearing before denying the petition. Accordingly, we overrule Gillespie's first assignment of error.
The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 LEO M. SPELLACY, J., and PATRICIA A. BLACKMON, J., CONCUR.
_____________________ DIANE KARPINSKI PRESIDING JUDGE
[1] This case does not involve a request for a new trial based on newly discovered evidence under Crim.R. 33(A)(6). We express, therefore, no opinion on whether Gillespie's new evidence would entitle him to a new trial under that rule. See, e.g., City ofDayton v. Martin (1987), 43 Ohio App.3d 87; State v. Abi-Sarkis
(1988), 41 Ohio App.3d 333.