JOURNAL ENTRY AND OPINION
Defendant-appellant Dominic Hagar appeals the jury verdict finding him guilty of three counts of aggravated robbery in violation of R.C. 2911.01. Each count contained a gun specification.
On April 26, 1999, a jury trial commenced. The first witness to testify for the plaintiff-appellee State of Ohio was Maurice Stanley, age fifteen (15). Stanley stated that on January 9, 1999, he was walking to a local store with his friend Elvin Comegys at approximately 5:00 p.m. Stanley testified a red car stopped a few feet away from where he was walking and a man with a .38 revolver exited the car. This man ordered Stanley and his friend to give him their money and dope. Stanley did not have any money, but was forced to give the man his watch, a bracelet, and his coat. Comegys was forced to give the man his money and his coat. Stanley then stated the man shouted, this block is shut down. Stanley said it was still light outside and he was close enough to the robber to see his face. Comegys and Stanley then ran off and called the police.
Stanley said during the course of the robbery the robber pointed a gun at he and Comegys and threatened to kill him because he did not have any money. In addition, he described the car as American, small and red; he described the gun as a .38 revolver that was rusty; and he described the robber as missing a front tooth. Stanley said he was later shown a photo array by the police and was able to identify the robber as the defendant because he recognized the defendant's face and missing front tooth. Stanley also identified defendant as the robber in court.
The next witness for the State was Elvin Comegys, age fifteen (15). Comegys described the events of the robbery the same as Stanley. He also stated the robber's car was small and red, the gun was a worn out .38 revolver, and that the robber said he was shutting the block down. Comegys testified the robber took $20 from him and took his coat. He said the robber took Stanley's bracelet and coat and threatened to kill Stanley because he did not have any money. Comegys said he noticed the robber was missing a front tooth.
After contacting the police, Comegys was shown a photo array and initially failed to identify defendant as the robber. However, once in court Comegys identified defendant as the robber and said he had no doubt defendant was the robber.
The third state witness was Jacob Slone. Slone said on January 9, 1999, at approximately 5:30 p.m. he was helping his father shovel snow when a small, red car pulled up. He stated a male jumped out of the car waving a .38 caliber handgun which he described as an older, used gun. He said this man pointed the gun right at his face and stated someone was selling dope to his mother and someone was going to die. Slone testified he tried to calm the man down but the man eventually entered his car and drove off. He said he thought his life was in danger. Slone was able to write the license plate number down. During the encounter, Slone said he noticed clothes piled up in the back of the car and that the car was banged up. Subsequently, Slone was shown a photo array and he identified defendant as the man who pointed the gun at him. Slone also identified defendant in court as this same man.
The fourth witness to testify for the state was Gary Morris. Morris testified that on January 9, 1999 at approximately 4:30 or 5:00 he was walking down the street when a rusty, maroon car pulled up near him. The male in the car asked Morris if he knew where someone named Ragee was. Morris said he told the male he did not know what he was talking about. Morris said the man then pulled out some money as if to buy drugs but he told the man he did not sell drugs. Morris continued walking, but a few minutes later the car pulled up near him again and he heard a gun shot. He said he turned around and saw a gun, which appeared to be a .22 caliber revolver, in the driver's hand. Morris testified the man stood next to the car and demanded his coat, gold chain, two rings, pager, and CD player. The robber also made him take off his shoes. The robber took everything but his coat and shoes. Morris then ran off. After a short run, Morris stated he looked back to see if the robber was still there when the robber saw him, fired his weapon, and yelled you think I'm playing with you. Later, Morris identified defendant as the robber from a photo array and in court.
The last two state witnesses were Cleveland Police detectives Raymond Burant and Tim Fitzpatrick. After reviewing all the reports, Burant testified he concluded that it was the same person who was responsible for the robberies of Stanley, Comegys, and Morris, and the menacing of Slone. He said the descriptions of the car, gun, and suspect were very similar. In addition, he traced the license plate number provided by Slone. The license plate number led to a green 1998 Ford Escort. However, Burant explained that people often get numbers mixed up so he transposed the last two numbers and the lead came back with a 1986 red Chevy Nova. Burant stated he and Fitzpatrick proceeded to the owner's address, which was not the defendant's, and knocked on the door. Defendant opened the door and when he saw the police Burant said he was surprised and saucer-eyed. Defendant then attempted to slam the door on the two policemen but the officers were able to push their way in and arrest defendant. Burant said during the course of the arrest he discovered a .380 caliber bullet laying on the floor of the living room.
Fitzpatrick'stestimony corroborated Burant's testimony. But he stated that he ran a computer check of the red Nova and discovered it had been towed and impounded by the Cleveland Police in 1998. The operator of the vehicle was listed as defendant. The state then rested.
On behalf of defendant, Jamie Coachman testified. She said she and defendant are friends and that on the day in question defendant was with her from 1:40 p.m. until 7:00 p.m. Coachman testified she and defendant talked and watched movies during this time. She said she remembers this day because defendant mistakenly came over to deliver a present for her mother's birthday which was actually the next day. Coachman said defendant traveled to and from her house by bus.
After hearing all the testimony, the jury returned a verdict of guilt as to all three counts of aggravated robbery and the gun specifications. Defendant was sentenced to two concurrent three year terms for the robberies and three consecutive yet concurrent terms for the firearm specifications. Defendant timely filed his appeal as to the jury verdict and now presents four assignments of error.
Defendant's first assignment of error states as follows:
 DOMINIC HAGAR WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO RENEW HIS OBJECTIONS TO THE ADMISSION INTO EVIDENCE OF THE .380 CALIBER BULLET.
Defendant states defense counsel made a motion in limine so as to prevent the introduction of the bullet as evidence. Subsequently, the trial court denied this motion. Defendant argues that when the bullet was first introduced at trial defense counsel should have objected. He claims the failure to object prejudiced him because the .380 bullet itself was irrelevant and prejudicial. Defendant contends there are no trial tactics which justify defense counsel not renewing his objection to the introduction of the .380 bullet.
In State v. Xie (1992), 62 Ohio St.3d 521, 524, the court stated that in order to prevail on a claim of ineffective assistance of counsel upon entry of a guilty plea, a defendant must meet the test set forth in Strickland v. Washington (1984), 466 U.S. 668. Under this test, the defendant must first show that counsel's performance was deficient and second, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. State v. Xie, supra; citing Hill v.Lockhart [1985], 474 U.S. 52, 59.
To demonstrate prejudice, appellant must show that a reasonable probability exists that, were it not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus.
It is well-established that a denial of a motion in limine
does not preserve error for review. A proper objection must be raised at trial to preserve error. State v. Brown (1988), 38 Ohio St.3d 305. Defendant complains defense counsel failed to renew an objection to the motion in limine or object at all to the admission of the bullet at trial.
The record demonstrates that the critical issue in this case was the identification of defendant. During the cross examinations of Stanley, Comegys, Stone, and Morris, defense counsel questioned each of them as to their physical descriptions of defendant, his car, and the gun. Defense counsel also questioned the witnesses as to how defendant approached them and whether they were able to clearly see defendant. Plus, defense counsel questioned the witnesses about the photo array identifications and whether defendant was easily distinguishable because his front tooth was missing. Other than the brief testimony of the detectives regarding where they found the bullet and its caliber, there were no other references to the bullet. The issue in this case was not the discovery of the bullet but rather the identification of defendant as the perpetrator of the crimes. The bullet was merely an insignificant piece of evidence that had very little evidentiary value.
In light of the three photo array identifications and four in-court identifications of defendant as the perpetrator, we find defense counsel's failure to object to the admission of the bullet as evidence did not amount to prejudice. There is an extremely strong probability that despite defense counsel's failure to object the outcome of the trial would not have been any different. Accordingly, defendant's first assignment of error is overruled.
Defendant's second assignment of error states as follows:
 BY ALLOWING IRRELEVANT AND PREJUDICIAL EVIDENCE, THE TRIAL COURT VIOLATED EVIDENCE RULES 402, 403, AND 404(B), AND UNDERMINED THE RELIABILITY OF DOMINIC HAGAR'S TRIAL IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Defendant complains the trial court allowed irrelevant evidence to be introduced and that, taken as a whole, prejudiced [him] severely. He argues the admission of the bullet prejudiced in two ways: (1) it suggested he had access to weapons and (2) it suggested that evidence, which bore no relation to the crime charged, should be weighted against him. Specifically, defendant claims the admission of the bullet violated Evid.R. 402 because it was irrelevant and had no relevance to the crime charged. Further, he argues the admission of the bullet violated Evid.R. 403 because when the jury heard the bullet was found in his living room they were able to presume that he had access to guns. Lastly, defendant contends the admission of the bullet violated Evid.R. 404 because it functioned as negative character evidence in the eyes of the jury by linking him to weapons.
Evid.R. 402 states that all relevant evidence is admissible. Evid.R. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Further, Evid.R. 403(A) provides:
 (A) * * * Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
`The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.' State v. Maurer (1984), 15 Ohio St.3d 239,265, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128. Defendant was charged with three counts of violating R.C. 2911 and each count contained a gun specification. R.C. 2911.01, Aggravated Robbery, states as follows:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
Thus, the crimes defendant was charged with involved the possession, control, or display of a weapon. As a result, whether defendant had a weapon during the commission of the crimes is of consequence to the determination of the action. The existence of the bullet establishes that it is more probable that defendant possessed a weapon. The bullet is clearly relevant to establishing the elements of aggravated robbery and the guns specifications. As to defendant's argument that the bullet improperly suggested he had access to weapons, we find no merit in this argument because suggesting that defendant had access to weapons is not improper and is a part of establishing aggravated robbery.
In addition, we find the admission of the bullet did not violate Evid.R. 403 as its probative value substantially out-weighed the danger of unfair prejudice, confusion of the issues, or misleading the jury. Stanley, Comegys, and Stone all testified defendant approached them and brandished a .380 caliber revolver. Morris testified defendant approached him with a .22 caliber revolver. The two police officers testified a live .380 caliber round was discovered in defendant's living room. The probative value of the bullet is that it is physical evidence, supporting the testimony of the state's witnesses, which demonstrates defendant had access to or possessed the ammunition which is used by the weapon in question. Defendant argues the admission of the bullet was prejudicial because it shows he had access to guns. We do not see the prejudice in the admission of the bullet. The bullet is relevant evidence and the jury was free to presume whatever it wants.
Lastly, defendant argues Det. Burant's testimony and the bullet was character evidence which in the eyes of the jury linked him to weapons and thus violated Evid.R. 404.
Evid.R. 404(A) states [E]vidence of a person's character or a trait of his characteristic is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, * * *. One of the issues in this case was proving defendant possessed a gun in the commission of the crimes. Defendant's character was not really at issue, or if it was, it was only a peripheral issue. The State said in its closing argument that the bullet showed defendant is a guy who possessed guns. We find this is a fair inference to make in light of the four witnesses who testified defendant possessed a gun. The admission of the bullet did not amount to character evidence. Accordingly, defendant's second assignment of error is overruled as the trial court did not abuse its discretion in admitting the bullet.
Defendant's third assignment of error states as follows:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO PRESERVE THE WRITTEN JURY INSTRUCTIONS AS PART OF THE RECORD FOR APPELLATE REVIEW.
Defendant argues the trial court committed reversible error in failing to preserve the written jury instructions for appellate review.
This assignment of error is moot in light of the fact that the state has provided this court with the written jury instructions. Accordingly, this assignment of error is overruled.
Defendant's fourth assignment of error states as follows:
 DOMINIC HAGAR WAS DENIED HIS FREEDOM WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant complains his conviction was against the manifest weight of the evidence. He claims the identification of him as the perpetrator is unreliable. In support, he maintains Comegys identified a picture of another man during the photo array and Slone testified the man who threatened him had a gold tooth. Also, defendant argues Jamie Coachman stated that he was in her home on January 9, 2000 from 1:40 p.m. until 7:00 p.m. which is the time period when the criminal incidents occurred. Moreover, defendant claims the license number taken by Slone did not match the license number of his car as Det. Burant testified he had to transpose the last two numbers to come up with the correct match.
Conducting a review based on the manifest weight standard, [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175. That review is tempered by the principle that weight and credibility questions are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, the power to reverse a judgment as being against the manifest weight of the evidence must be exercised with caution and only where the evidence weighs heavily against the conviction. State v.Abi-Sarkis (1988), 41 Ohio App.3d 333.
In the instant matter, defendant does not contend the crimes were not committed, instead he argues he was not the person who committed the crimes. The evidence suggests otherwise. Three of the four victims identified defendant a short time after the incidents as the perpetrator of the crimes from photo arrays. These same three witnesses stated the person who threatened and robbed them had a tooth missing. The photo identifying defendant shows he had a tooth missing These three witnesses also identified defendant in court as the perpetrator. The fourth witness, Elvin Comegys, stated during trial he confused defendant with another man during the photo array but that defendant was definitely the man who robbed him.
In addition, Stanley, Comegys and Slone all stated defendant carried a .38 revolver and drove a red car during the commission of the crimes. Detectives Burant and Fitzpatrick testified a live .380 caliber bullet was discovered in defendant's living room. Plus, a red car with a matching license plate number to defendant's girlfriend's car was towed by the City of Cleveland prior to the instant crimes and defendant was listed as the driver. This same red car was parked outside the apartment where defendant was residing when the police officers went to arrest him.
After reviewing the entire record, weighing the evidence, and making all reasonable inferences, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. The victims' descriptions of the gun and car, and the physical appearance of defendant, especially the distinguishing characteristic of the missing front tooth, in conjunction with the detectives testimony that they traced him by the red car and found a .380 caliber bullet in the apartment demonstrates the jury did not lose its way. Defendant's fourth assignment of error is overruled.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., CONCURS. ANN DYKE, A.J., CONCURS INJUDGMENT ONLY.
 ______________________ JOHN T. PATTON, JUDGE