### State v. Allen
*[Cite as 7 AOA 23]*

*Case No. C-890416*
*Hamilton County, (1st)*
*Decided September 12, 1990*

*Arthur M. Ney, Jr., Prosecuting Attorney, and Ronald W. Springman, Jr., 420 Hamilton County Courthouse, Court and Main Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee.*

*George W. Clark, 4343 Marcrest Drive, Cincinnati, Ohio 45211, for Defendant-Appellant.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, the briefs and the arguments of counsel.

The defendant-appellant, Steve Allen, was convicted of two counts of rape in a bench trial. In his appeal, Allen raises issues involving whether the victim of the offenses, a child who was six years old at the time of the rapes and nine years old at the time of trial, was competent to testify, and whether the trial court erred when it permitted an examining physician to recount the victim's statement to her concerning the fact of penetration. Allen also requests appellate review of typewritten notes made by an investigating police officer to determine, pursuant to Crim. R. 16(B)(1)(f) and (g), whether they contain any material helpful to him that was not previously disclosed by the state or any statement inconsistent with the testimony of the witnesses. Allen further challenges the judgment as being against the manifest weight of the evidence. We reject each of his contentions and affirm the judgment of the trial court.

The incidents of rape involving oral and vaginal penetration allegedly occurred sometime during the night of September 6, 1986, although the precise date is in some dispute. On the evening in question, the victim and her family, including her mother, Denise Bryant-Swinford, and her two brothers, Michael and Steven, visited the home of the defendant's wife, Debbie Allen, and remained there overnight. Also present during the visit were the defendant, who had been living apart from his wife for several months, the Allens' four children, Debbie Allen's sister Mandy Pridemoor, and Pridemoor's four children.

At trial, the victim testified that, after everyone had gone to bed, the defendant entered the room where she and her brothers slept, nudged her shoulder to awaken her and tried to kiss her. After she pushed her baby brother to awaken him and cried "help," the defendant pushed her brother's head back down and covered her mouth, instructing her to get onto the floor and to take her shorts off. When she complied, the defendant removed his pants, got on top of her, and "started going up and down." T.p. 47. He then placed his penis in her mouth and finally, as he was getting ready to leave, warned her that if she "told anyone he was going to kill me and my mom." T.p. 51. The victim testified that she did not say anything during or after the incident because she was too frightened.

The incident came to light a year later, when the victim fell off her bicycle and suffered a small abrasion on her vulva. After telling her mother that she was bleeding, her mother became curious about her odd behavior and began questioning whether anyone had "touched" her. Denise Swinford-Bryant testified that after almost two hours of questioning, her daughter told her about the rape and expressed her fear that the defendant would kill her.

Once the victim told her mother, the police were informed and the victim was taken to Children's Hospital, where Dr. Lisa Christensen gave her a complete physical examination. During the examination, which revealed that the victim's hymen had been ruptured at least two weeks earlier, the victim told the doctor about being sexually assaulted. At trial, the doctor was permitted, over the defendant's objection, to recount the victim's statements that "a man had come into the room" and that there had been both oral and vaginal penetration, and further testified that the victim's condition was consistent with penetration, and that the rupture could not have been caused by the fall from the bicycle.

The incident was investigated by Cincinnati Police Specialist James Honnert, who, in the course of his investigation, made notes, which the defendant was later permitted to inspect, concerning statements made by the defendant during an interview following his arrest. The officer also prepared, in a typed summary not disclosed to the defendant, notes from an interview of such witnesses as the victim and her mother. At trial, the defendant, through his counsel, requested the trial court to review the withheld summary *in camera* to determine whether it contained either any inconsistencies in the victim's testimony or any

evidence favorable to the defendant. The trial court complied with the request, but found no inconsistencies.

The defendant admitted being present at his wife's residence during the overnight visit of the victim and her family, but, as he informed the investigating officer, he did not accept responsibility for committing the rapes. He did concede, however, that he had been drinking that evening and that he sometimes suffered a loss of memory from intoxication.

On the basis of this and other testimony adduced at trial, the defendant was found guilty of both counts of rape, in violation of R.C. 2907.02, and sentenced to two consecutive terms of imprisonment for life. His appeal is now advanced in four assignments of error.

In his first assignment of error, the defendant asserts that the trial court erred when it ruled that the victim was competent to testify at trial. His challenge centers on the victim's age, her inability to remember events around the time of the rape, and her lack of understanding of the concept of time. In particular, the defendant notes that the victim, when questioned upon voir dire, could not remember her birthday three years earlier or where she lived at that time. The victim stated that she did not remember 1986, or the time she went to the hospital, or how long before that time the rape had occurred. She also did not know whether the rapes occurred during the Christmas season.

Under Evid. R. 601(A), "[e]very person is competent to be a witness except *** children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or relating them truly*** ." The test for determining competency is whether the witness has the intellectual capacity to recount the events accurately and to understand the necessity for telling the truth. *State v. Lee* (1983), 9 Ohio App. 3d 282, 459 N.E.2d 910. A reviewing court will not reverse a trial court's determination unless the trial court has abused its discretion. *State v. Holt* (1969), 17 Ohio St. 21, 81, 246 N.E.2d 365.

There is evidence in the record before us to support the trial court's determination that the victim was competent to testify. The victim testified on voir dire that, among other things, she remembered what she did on July 4th when she was six years old, where she attended kindergarten, and when she went to Children's Hospital to be examined. She further testified that she knew the difference between the truth and a lie, stating that people who tell a lie "get into trouble." The defendant's objections to her competency on the ground of her inadequate perception of time are not dispositive of her ability to render testimony competently. *Lee, supra,* at 283, 459 N.E. 2d at 911. We find no abuse of the trial court's discretion to permit the victim to testify, and the defendant's first assignment of error is overruled.

The defendant's second assignment of error is addressed to the expert testimony given by Dr. Lisa Christensen of Children's Hospital. When asked if the victim stated whether there had ever been any vaginal penetration, the doctor replied, "Yes. She said that she -- that the man -- that there had been penetration." T.p. 97. Although the defendant urges generally that the statement was hearsay, it appears that the thrust of the argument is primarily addressed to the weight given the testimony. The defendant argues that it is unlikely that the victim used or understood the words, "penetration" or "vagina." The question of whether the words chosen by the doctor were those spoken by the victim, or a summary of them, is really one of credibility, an issue that primarily remains to be determined by the trier of fact. See *State v. DeHass* (1967), 10 Ohio St. 2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Corroborative physical evidence, consisting of the doctor's expert medical testimony that the victim had suffered a ruptured hymen, and the seclusion of the doctor and victim from any influence from the victim's parents at the time the statement was made, also provide indicia of reliability indicating that the trial court's admission of the statement into evidence under Evid. R. 803(4) was proper under the hearsay exception for statements made "for purposes of medical diagnosis or treatment." Evid. R. 803(4); *State v. Boston* (1989), 46 Ohio St. 3d 108, 545 N.E.2d 1220. The defendant's second assignment of error is, therefore, overruled.

The defendant's third assignment of error asserts that the trial court erred when it refused to permit his trial counsel to inspect the typewritten summary of notes made by the police officer who questioned the defendant, where the officer "testified at trial as to statements made by the defendant to him." Although the defend-ant's counsel was permitted to view the handwritten notes taken by Police Specialist Honnert during his interview with

the defendant, the assignment of error is apparently addressed instead to the typed summary of notes taken during his interview with the victim and other witnesses. The defendant's statement of the issue presented for review raises the further question of whether the notes contained evidence favorable to the defendant, and refers to the officer's type-written notes. The accompanying argument states that the notes were sealed by the trial court, marked "Defense Exhibit B," and included with the evidence of the case, and refers to those pages of the transcript concerning the admission of the typewritten notes. The transcript shows that the defendant's trial counsel, without having been permitted to view the notes, requested the trial court to review them for statements inconsistent with the victim's testimony and for any evidence favorable to the defendant. T.p. 117. The trial court reviewed the notes, and although it is unclear whether it permitted defense counsel to participate in the review, it found them to contain no inconsistencies[1]

Although the defendant's assignment is not artfully drawn and apparently is inconsistent with the issue and argument he presents for review, some of the confusion may be attributable to the fact that defendant's appellate counsel, who did not represent the defendant below, has not been afforded the opportunity to review the notes and is therefore unaware of their contents.

We have therefore proceeded to review the sealed, typewritten notes to determine whether they contain any statements of the witnesses who testified at trial that are inconsistent with their testimony at trial, see Crim. R. 16(B)(1)(g), or whether they contain any evidence favorable to the defendant and material to either guilt or punishment. See Crim. R. 16(B)(1)(f).

We first note that the summary of notes contains no "written or recorded statements" of a witness within the meaning of Crim. R. 16(B)(1)(g). Before a writing or recording can be considered a "statement" of a witness, pursuant to Crim. R. 16(B)(1)(g), "it must be shown that either the witness prepared, signed or adopted the statement, or that it minimally is a continuous narrative statement made by the witness and recorded verbatim, or nearly so." *State v. Henry* (1987), 37 Ohio App. 3d 3, 523 N.E.2d 877; *State v. Cummings* (1985), 23 Ohio App. 3d 40, 491 N.E.2d 354. A police officer's notes of an interview of a witness during an investigation do not constitute a "written or recorded

statement."*State v. Washington* (1978), 56 Ohio App. 2d 129, 381 N.E.2d 1142. The summary of notes in question does not contain a narrative statement of a witness recorded verbatim, and therefore was not available to the defense counsel for use in cross-examination pursuant to Crim. R. 16(B)(1)(g).

Although the summary of notes contains no "written or recorded statement" of a witness, the summary does contain evidence indicating that the victim told the police officer that the sequence of oral and vaginal penetrations occurred in a different order from that recounted by the victim at trial. Although the notes do not tend to exonerate the defendant on their face, they may have been used to question the credibility of the victim once the variation in sequence became apparent, and therefore might arguably have been evidence favorable to the defendant under Crim. R. 16(B)(1)(f).

We note that there may be a logical inconsistency in permitting a defendant access to evidence that is favorable to him merely by its potential for impeachment, where the defendant may be denied access to the same evidence under Crim. R. 16(B)(1)(g) because it does not constitute a "statement" within the meaning of that rule. In any event, however, we hold that the notes in question do not contain evidence that is "favorable to the defendant and material either to guilt or punishment."

In determining whether the prosecution has improperly suppressed evidence favorable to an accused, the evidence will be deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley* (1985), 473 U.S. 667, 105 S. Ct. 3375; *State v. Wickline* (1990), 50 Ohio St. 3d 114, 552 N.E.2d 913; *State v. Johnston* (1988), 39 Ohio St. 3d 48, 529 N.E.2d 898.

Although *Bagley, Wickline and Johnston* all involved due process challenges, we construe Crim. R. 16(B)(1)(f) to incorporate those due process requirements into the rules of criminal procedure and, therefore, to require the same analysis. The phrase contained in the rule, "favorable to the defendant and material either to guilt or punishment," is a paraphrase of the language used by the United States Supreme Court in its seminal decision on the due process rights of an accused to evidence suppressed by

the prosecution, *Brady v. Maryland* (1960), 373 U.S. 83, 83 S. Ct. 1194.[2] It has been noted elsewhere that the Ohio Rules of Criminal Procedure were drafted and adopted in 1973 "with full knowledge of the decisions made by the Supreme Court of Ohio and the United States the past quarter century, in respect to what the provisions of the bill of rights of Ohio and the VI Amendment to the U.S. Constitution require, in the administration of criminal law, in their implementation." *State v. Kinney* (1974), 44 Ohio Misc. 69, 73 O.O. 2d 260, 263, 337 N.E. 2d 668, 672. Similar challenges based on both due process and procedural grounds previously have been disposed of on due process grounds alone. See *State v. Eubank* (1987), 38 Ohio App. 3d 141, 528 N.E.2d 1294.

Applying the test of *Bagley, supra,* to the facts before us, we cannot say that there exists a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Given the presence of corroborating physical evidence in this case, even if the defense were permitted to use the inconsistency concerning the sequence of events noted in the police officer's notes, our confidence in the outcome of this case would not be undermined. We, therefore, overrule the defendant's third assignment of error.

In his fourth assignment of error, the defendant contends that the judgment was against the manifest weight of the evidence. The defendant's contention is based principally on the asserted incompetency of the victim to testify, as discussed in his first assignment of error. When a defendant asserts that the verdict and judgment are against the manifest weight of the evidence, an appellate court reviews the record and determines if the trier of fact clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S. Ct. 2211; *State v. Robinson* (1955), 162 Ohio St. 486, 124 N.E.2d 148. Sitting as a "thirteenth juror," this court independently reviews the evidence and the related inferences and assesses the weight and credibility of each witness's testimony. The power to reverse a conviction on the manifest weight of the evidence, however, should be exercised with caution, and an appellate court should reverse only if the evidence weighs heavily against conviction. *State v. Abi-Sarkis*

(1988), 41 Ohio App. 3d 333, 535 N.E.2d 745; *State v. Martin* (1983), 20 Ohio App. 3d 172, 485 N.E.2d 717.

The record does not establish that the trial court lost its way in weighing the evidence. Once the competency of a witness has been determined, the credibility of the witness remains a separate question to be determined by the trier of fact. See *State v. Johnston* (Dec. 31, 1986), Clermont App. No. CA85-12-105, unreported, reversed on other grounds (1988), 36 Ohio St. 3d 224, 522 N.E.2d 1082. We have reviewed the entire record, and we do not find that the trial court lost its way and created a manifest miscarriage of justice when it credited the victim's testimony. The defendant's fourth assignment of error is, therefore, overruled. The judgment of the trial court is, accordingly, affirmed.

UTZ, P.J., DOAN and GORMAN, J.J.

---

[1] The transcript reflects, in part, the following colloquy: Defense Counsel): And I am, therefore, asking, pursuant to the rules, that the Court examine those notes to determine if there are any inconsistent statements from what [the victim) has testified in court, or any evidence favorable to the testimony that has been brought in court.

THE COURT: All right. Do you have a --

THE WITNESS: I have a typed summary, sir.

(The police officer handed documents to the Court.)

(There was a discussion off-the-record among defense counsel and prosecutor.)

(The judge examined the documents.)

THE COURT: I don't find any consistencies.

(The Court handed documents back to the witness.) T.p.118-119.

[2] The Court in Brady held that:

[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 87, 83 S. Ct. at 1196.