DECISION.
Defendant-appellant, Shawn Heard, was convicted of the aggravated murder of her nineteen-day-old son, Brendan Walker, pursuant to R.C. 2903.01(C). We find no merit to her arguments for reversal of that conviction, and we affirm the judgment of the trial court.
Evidence presented at a jury trial showed that on November 4, 1997, at approximately 2:45 p.m., Heard dialed 911 and reported that her baby was not breathing. The 911 operator dispatched the fire department and instructed Heard on how to administer cardiopulmonary resuscitation. The operator testified to her perception that Heard made no effort to comply with the instructions. Heard's calm demeanor surprised firefighters who responded to the scene. They found the infant lying on the bed, wrapped in a blanket. Although he still felt warm, which they opined was due to the blanket, he had no vital signs. The firefighters also noticed scratches on the boy's neck. They conducted life-saving operations as they took him to the hospital, where he was declared dead.
That same day, police officers interviewed Heard, whom they had been told was "slow." They testified that they believed the case to involve strangulation. They approached her sympathetically because they viewed the case not as a "cold-hearted murder," but as a situation where a mother lost her "cool." Heard, who was a high-school graduate and who lived alone, stated that she understood her rights. The officers described her as calm and unemotional. Heard had originally claimed that she fed the baby at 12:30 p.m. and put him to bed. When she went to check on him later, he was not breathing. She subsequently told the officers in a taped statement that, when the baby would not stop crying, she squeezed his neck so that he would be quiet. She claimed that she did not intend to hurt the child, but that "it just got too big."
The following day, the same police officers received a surprise when they attended the deputy coroner's autopsy of the baby. The coroner discovered evidence that the baby had been strangled, consistent with Heard's statement. But he testified that the marks on the child's neck were not just scratches but were gouges deep enough to penetrate into the neck muscle. The coroner also discovered evidence of blunt force to the child's face, of sufficient force to fracture a bone near the child's eye, and damage to the child's brain caused by a violent shaking. The coroner testified that all three injuries combined to cause the child's death, which he estimated had occurred between 11:00 a.m. and 1:00 a.m., hours before Heard called 911.
In her sole assignment of error, Heard argues that prosecutorial misconduct and numerous prejudicial errors by the trial court denied her a fair trial. Under this assignment of error she presents six separate issues for review, which we will discuss separately. We find no merit in her arguments, and we, therefore, conclude that her assignment of error is not well taken.
In her first issue for review, Heard contends that the prosecutors engaged in various instances of misconduct. The test for prosecutorial misconduct is (1) whether the conduct was improper, and (2) if so, whether the improper conduct prejudicially affected the accused's substantial rights. SeeState v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293,300. Prosecutors are normally entitled to wide latitude in their remarks. See State v. Mason (1998), 82 Ohio St.3d 144, 162,694 N.E.2d 932, 952; Maggio v. Cleveland (1949), 151 Ohio St. 136,84 N.E.2d 912, paragraph two of the syllabus. Nevertheless, prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence. See Lott, supra, at 166, 555 N.E.2d at 300. The conduct of the prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. See State v. Keenan
(1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203, 206. "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Lott, supra, at 166,555 N.E.2d at 301, quoting Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 947.
First, Heard contends that the prosecutor improperly commented on her failure to testify by stating that the only evidence the jury heard was the state's evidence. We note that Heard failed to object to this remark. Consequently, she waived any error unless it rises to the level of plain error. See Statev. Wickline (1990), 50 Ohio St.3d 114, 119-120, 552 N.E.2d 913,919-920.
The prosecutor's reference in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify when the comment is directed to the strength of the state's case and not to the silence of the accused. See State v.Ferguson (1983), 5 Ohio St.3d 160, 450 N.E.2d 265, syllabus. In this case, the prosecutor's comment that the only evidence the jury heard was from the state was not "manifestly intended or of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."State v. Webb (1994), 70 Ohio St.3d 325, 328-329,638 N.E.2d 1023, 1028, quoting Knowles v. United States (C.A.10, 1955),224 F.2d 168, 170. Further, the trial court instructed the jury that it could not consider Heard's failure to testify for any purpose, and we must presume that the jury followed the trial court's instructions. See Ferguson, supra, at 163, 450 N.E.2d at 268. Consequently, we cannot hold that the prosecutor's remark was improper or that it unfairly prejudiced Heard, much less that it rose to the level of plain error. See State v. Hill (Feb. 19, 1999), Hamilton App. No. C-971098, unreported.
Heard next contends that the prosecutor improperly argued that "[n]obody speaks for baby Brendan," and that Heard had treated the infant "like a piece of trash," and that defense witnesses were presented only to confuse the jury. Again, Heard failed to object to these remarks. We have reviewed the prosecutors' arguments, and we hold that their remarks, for the most part, were fair comments on the evidence. See State v. Goff
(1998), 82 Ohio St.3d 123, 135, 694 N.E.2d 916, 926; State v.Hirsch (Aug. 7, 1998), Hamilton App. No. C-970315, unreported. Further, we cannot conclude, after reviewing the remarks of which Heard complains in the context of the entire argument, that they were so egregious as to deny Heard a fair trial. See Hill, supra. Compare State v. Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883.
Finally, Heard contends that the prosecutor improperly asked a defense witness if she was "an advocate for this baby Brendan, who was brutally killed, at all[.]" Heard's counsel immediately objected to this question, and the trial court stated that it was improper and sustained the objection. We note that Heard was charged with and convicted of a death-penalty specification. This comment occurred during the penalty phase, and the jury concluded that the state had failed to prove that Heard should receive the death penalty. Under the circumstances, we cannot conclude that this isolated comment substantially affected Heard's rights or denied her a fair trial. See Hill, supra; Hirsch, supra.
Additionally, in her fourth issue for review, Heard contends that the prosecutor improperly elicited testimony and argued about Heard's competency and sanity. She argues that she did not rely on an insanity defense or place her competency in issue, and that the state placed an unfair burden on the defense to rebut issues that it did not raise. First, Heard never objected to the prosecutor's comments or questions on these issues and waived all but plain error. See Wickline, supra, at 119-120,552 N.E.2d at 919-920. Second, the record demonstrates that the prosecutor's comments were a proper response to Heard's defense at trial. The defense attempted to show that Heard did not purposely kill the child, but that, because of her mental deficiency, she had unintentionally killed him while attempting to quiet him. Consequently, it was Heard who put her mental state in issue, and the state was entitled to try to rebut her defense. The prosecutor's remarks were fair comments on the evidence, and they do not rise to the level of reversible error, much less plain error. See Goff, supra; Hirsch, supra.
In her second issue for review, Heard contends that the trial court erred in admitting gruesome and cumulative photographs of the victim into evidence. While the photographs were undoubtedly gruesome and horrendous, we cannot hold that their probative value was outweighed by the danger of unfair prejudice to Heard. SeeState v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, paragraph seven of the syllabus. A central issue at trial was whether the nature of the injuries that caused that child's death indicated whether Heard had purposely killed the child. The trial court used only half of the pictures the coroner had taken, and the coroner specifically testified that he needed the pictures that the trial court had selected to explain his testimony regarding the child's cause of death. The trial court was sensitive to the horror of the photographs and took great care to ensure that they were not repetitious. Under the circumstances, we cannot say that the trial court's decision to admit the photographs was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See State v. Smith (1997),80 Ohio St.3d 89, 108-109, 684 N.E.2d 668, 687-688; State v. Morales
(1987), 32 Ohio St.3d 252, 257-258, 513 N.E.2d 267, 273-274; Statev. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 148.
In her third issue for review, Heard contends that the trial court should not have denied her motion to suppress her statements to the police. She claims that her statements were involuntary due to her lack of mental capacity. In making this argument, Heard intertwines two distinct issues: (1) whether she knowingly, intelligently and voluntarily waived her Miranda rights; and (2) whether her statement to the police was made voluntarily under the Due Process Clause. See State v. Eley (1996), 77 Ohio St.3d 174,178, 672 N.E.2d 640, 646; State v. Cedeno (Oct. 23, 1998), Hamilton App. No. C-970465, unreported.
As to the Miranda analysis, the state bears the burden of proving by a preponderance of the evidence that the accused made a voluntary, knowing and intelligent waiver of his or her Miranda
rights. See State v. Edwards (1976), 49 Ohio St.2d 31, 38,358 N.E.2d 1051, 1057, vacated as to death penalty (1978),438 U.S. 911, 98 S.Ct. 3147. Courts will not presume a waiver from the simple fact that the accused responded to the interrogation. SeeEdwards, supra, at 37-38, 358 N.E.2d at 1057-1058; State v. Rowe
(1990), 68 Ohio App.3d 595, 606, 589 N.E.2d 394, 401. A suspect's decision to waive her Fifth Amendment privilege is made voluntarily in the absence of evidence that her will was overborne or that her capacity for self-determination was critically impaired because of coercive police conduct. See State v. Dailey
(1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." Id. at 91, 559 N.E.2d at 463, quoting Moran v.Burbine (1986), 475 U.S. 412, 422-423, 106 S.Ct. 1135, 1141.
As to the voluntariness issue, the prosecution must prove by a preponderance of the evidence that the confession was voluntary. See Lego v. Twomey (1972), 404 U.S. 477, 489, 92 S.Ct. 619, 627;Cedeno, supra. The Ohio Supreme Court declared in State v.Edwards:
 In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.
Edwards, supra, paragraph two of the syllabus. Coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the Due Process Clause.Colorado v. Connelly (1986), 479 U.S. 157, 167, 107 S.Ct.515, 522; State v. Combs (1991), 62 Ohio St.3d 278, 285,581 N.E.2d 1071, 1078.
Heard premised her assertion that her confession was involuntary upon a claimed lack of mental capacity. The evidence presented at the hearing on the motion to suppress showed that Heard was "developmentally handicapped" or slightly retarded. Nevertheless, a suspect's low intelligence level alone does not make the suspect's statement to the police involuntary. See Statev. Hill (1992), 64 Ohio St.3d 313, 318, 595 N.E.2d 884, 890; Statev. Cook (June 5, 1996), Hamilton App. Nos. C-940414, C-940420, C-940431, C-940416, C-940424, C-940432, C-940419 and C-940425, unreported. The trier of fact must determine whether the totality of the circumstances surrounding the interrogation demonstrates that the defendant made an uncoerced choice to waive his or her rights and had "the requisite level of comprehension" of the consequences of the decision to abandon those rights. State v.Stanley (1997), 121 Ohio App.3d 673, 697, 700 N.E.2d 881, 896.
Heard was twenty-four years old at the time of her interrogation. The police officers were aware that she had been described as "slow." But she informed them that she was a high-school graduate, and that she could read and write. The police officers read her rights to her, and then Heard read the waiver-of-rights form aloud and signed it. Both officers testified that Heard appeared to understand her rights and the reason that she was being questioned. The record contains no evidence at all of police coercion, and Heard does not claim that the officers used abuse or threats. To the contrary, the record shows that the interrogation was not long and protracted and that Heard was offered food and drink.
Consequently, the record demonstrates that Heard's statements were not the result of coercive police misconduct, and that Heard adequately understood her circumstances and the consequences of the decision to waive her rights. The state proved by a preponderance of the evidence that she had made a knowing, intelligent and voluntary waiver of her Miranda rights and a voluntary confession. Therefore, the trial court did not err in overruling her motion to suppress her statements to the police.
In her fifth issue for review, Heard claims she was prejudiced because the trial court failed to provide her with adequate funds to hire experts, and therefore she could not adequately defend herself. Specifically, she contends that she did not have the funds to hire an independent investigator, a crime-scene investigator or a coroner.
R.C. 2929.024 requires the court, in an aggravated-murder prosecution, to provide an indigent defendant with expert assistance whenever the court, in its discretion, determines that the services are reasonably necessary for the proper representation of the defendant. The court must consider (1) the value of the expert assistance to the defendant's proper representation, and (2) the availability of alternatives that would fulfill the same functions as the expert assistance sought. See State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264, paragraph four of the syllabus; State v. Sowell (1991), 73 Ohio App.3d 672,680-681, 598 N.E.2d 136, 141-142. Due process does not require the government to provide expert assistance to an indigent defendant in the absence of a particularized showing of need, see State v. Mason (1998), 82 Ohio St.3d 144, 150,694 N.E.2d 932, 943, and "undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate." Sowell, supra, at 681, 598 N.E.2d at 142, quotingState v. Scott (1987), 41 Ohio App.3d 313, 315, 535 N.E.2d 379,382.
Heard did not ask the trial court for the services of the experts she now contends she lacked. Besides waiving any error, see Wickline, supra, at 119-120, 552 N.E.2d 919-920, she could not have demonstrated any particularized need to the trial court. In this appeal, she has not stated why she needed the services of the experts beyond the generalized assertion that they were essential to her defense. Further, Heard was provided with other expert assistance upon her request. Heard asked for and received authorization to hire a mitigation specialist, a neuropsychologist, and a clinical forensic specialist. Under the circumstances, Heard was not denied "the basic and integral tools necessary to ensure a fair trial." Mason, supra, at 149,694 N.E.2d at 943.
Finally, in her sixth issue for review, Heard contends that her conviction was against the manifest weight of the evidence because the evidence did not demonstrate that she had the requisite mental state. R.C. 2903.01(C) provides that "[n]o person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense." A person acts purposely when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). A person is presumed to intend the natural, reasonable and probable consequences of his or her acts. State v.Johnson (1978), 56 Ohio St.2d 35, 39, 381 N.E.2d 637, 640; Statev. Gordon (Aug. 22, 1997), Hamilton App. No. C-960624, unreported.
The determination of whether the accused acted with the required culpable mental state must be gathered from the surrounding facts and circumstances. See Johnson, supra, at 38,381 N.E.2d at 640; Gordon, supra. "An intent to kill may be presumed where the natural and probable consequence of the wrongful act done is to produce death. It may be deduced from the surrounding circumstances, including the instrument used, its tendency to destroy life if designed for that purpose, and the manner of inflicting the wound." State v. Robinson (1954),161 Ohio St. 213, 218-219, 118 N.E.2d 517, 521; accord State v.Robinson (Mar. 31, 1999), Hamilton App. No. C-970881, unreported.
Here, the nature and severity of the child's injuries support the jury's finding that Heard purposely killed him. The coroner's testimony showed that she caused his death in not one, but three ways: (1) by striking him in the head hard enough to fracture the bones in his face; (2) by violently shaking him, causing severe brain injuries; and (3) by strangling him with sufficient force to leave deep gouges in his neck. This evidence, together with evidence of her calm demeanor, clearly contradicted Heard's claim that she simply intended to quiet the child. Further, the evidence also demonstrated that, despite Heard's limited mental capacity, she was capable of forming an intent to kill. Under the circumstances, we cannot conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Consequently, Heard's conviction was not against the manifest weight of the evidence. See State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541, 546-547; State v. Allen (1990),69 Ohio App.3d 366, 374, 590 N.E.2d 1272, 1278.
In sum, we cannot hold that any errors alleged to have been committed by the trial court, either individually or cumulatively, caused unfair prejudice to Heard or denied her a fair trial. SeeGoff, supra, at 140, 694 N.E.2d at 929-930; Hirsch, supra. Consequently, we overrule her sole assignment of error, and we affirm her conviction for aggravated murder.
Judgment affirmed.
 Doan, P.J., Hildebrandt and Winkler, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.