DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Drew Parker, Sr., appeals from the judgment of the Lorain County Court of Common Pleas, convicting him of sixteen counts of gross sexual imposition and four counts of felonious sexual penetration. We affirm.
 I.
On March 20, 1987, Cally married Drew Parker, Jr. ("Drew, Jr."). Cally had two children from a previous marriage, Amanda and Andrea, who were ages seven and five, respectively. Drew, Jr. also had two children from a previous marriage, named Jason and Jessica. Drew, Jr. adopted Amanda and Andrea.
Shortly after their marriage, Cally and Drew, Jr. moved into a house that was across the street from the home of Drew, Jr.'s parents — appellant Drew Parker, Sr. ("Mr. Parker") and Roma Parker ("Roma"). Mr. Parker and Roma were Amanda and Andrea's step-grandparents. All four children frequently visited their grandparents, and on Friday nights, the children would sleepover at their grandparents' home.[1] These Friday night sleepovers began the same week that Drew, Jr. and Cally got married. Shortly thereafter, during the sleepovers, Mr. Parker began inappropriately touching Amanda and Andrea. Amanda testified that Mr. Parker would rub her breasts and buttocks, and that he put his finger inside her vagina. Similarly, Andrea testified that Mr. Parker would sexually touch her breasts, buttocks, and vaginal area. The sexual touching continued until their mother began home schooling them in September 1991. At that time, both girls were under thirteen years of age.
As the victims were afraid of ruining their new family, neither child told anyone until years later. In April 1997, Amanda told her mother about the sexual abuse after being confronted about allegedly improper telephone conversations between herself and some boys.[2] Andrea, who was listening to Amanda's conversation with her mother, told her mother that she had been sexually abused by her step-grandfather as well.[3]
On July 30, 1997, the Lorain County Grand Jury indicted Mr. Parker on twelve counts of gross sexual imposition, in violation of R.C. 2907.05(A)(3), four counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), and four counts of felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b).[4]
The counts of gross sexual imposition were alleged to have been committed between April 1, 1987 and July 31, 1991, while the counts of felonious sexual penetration were alleged to have been committed between September 27, 1989 and July 31, 1991. Amanda and Andrea were both under thirteen years of age when these crimes were alleged to have occurred.
A three-day jury trial was held on June 15, 16, and 17, 1998. At trial, Mr. Parker's counsel did not present an expert witness because in a journal entry on June 3, 1998, the trial court precluded appellant's counsel from presenting any expert evidence or testimony, as appellant's attorney did not produce an expert report in a timely manner. The jury returned a verdict that was journalized on June 19, 1998, finding Mr. Parker guilty on all twenty counts. Mr. Parker was sentenced accordingly. This appeal followed.
Appellant asserts four assignments of error. We will address each in turn.
 II.
A. First Assignment of Error
THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT OVERRULED THE DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29 BECAUSE THE CONVICTIONS WERE UNSUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION OF THE UNITED STATES.
Mr. Parker contends that there was insufficient evidence to support his convictions for gross sexual imposition and felonious sexual penetration. We disagree.
"The test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Statev. Leggett (Oct. 29, 1997), Summit App. No. 18303, unreported, at 3-4. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. at 4. "In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
To be convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4),[5] the state must prove, beyond a reasonable doubt, that the defendant had sexual contact with another person, not the spouse of the offender, who was less than thirteen years of age, regardless of whether or not the defendant knew the person's age. Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genital, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
To convict a defendant of felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b),[6] the state must prove, beyond a reasonable doubt, that the defendant, without privilege to do so, inserted any instrument, apparatus, or other object into the vaginal or anal cavity of another person, not the spouse of the defendant, who was less than thirteen years of age, regardless of whether or not the defendant knew the person's age.
We find that the state's evidence, viewed in a light most favorable to the prosecution, provides ample basis for concluding that all of the elements of gross sexual imposition and felonious sexual penetration were met. Mr. Parker challenges the sufficiency of the state's case based upon lack of evidence as to the specific dates of each offense. The exact time of a crime, however, is not an essential element of these crimes. See Statev. Lawrence (Dec. 1, 1999), Lorain App. No. 98CA007118, unreported, at 11. In the case at bar, it is undisputed that both Amanda and Andrea were under thirteen years old when the improper touching occurred and that neither child was married to Mr. Parker. Moreover, both Amanda and Andrea testified to a pattern of abuse that extended for a period of four years and that the improper sexual touching occurred virtually every Friday night. Further, each victim testified that appellant would sexually touch their breasts, buttocks, and vaginal area. In addition, Amanda testified that Mr. Parker would insert his finger into her vagina and that this conduct happened almost every Friday night. After carefully reviewing the record, we conclude that in viewing the evidence in a light most favorable to the prosecution, a rational jury could have found that the essential elements of gross sexual imposition and felonious sexual penetration were proven beyond a reasonable doubt; hence, we hold that the evidence adduced before the trial court was not insufficient, as a matter of law, to support a conviction of Mr. Parker. Mr. Parker's first assignment of error is overruled.
B. Second Assignment of Error
THE DEFENDANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Parker asserts that his conviction was against the manifest weight of the evidence. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Furthermore, "[i]t is axiomatic that this court does not sit as a trier of fact. Rather, `on [sic] the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts.'" Kuempel Serv. Inc. v. Zofko (1996),109 Ohio App.3d 591, 598, quoting State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The elements of gross sexual imposition and felonious sexual penetration were discussed above.
In the case at bar, as previously noted, both Amanda and Andrea testified that Mr. Parker had repeatedly touched their breasts, buttocks, and genital areas, and that this touching occurred almost every Friday night. Amanda also testified that appellant had placed his finger inside her vagina during almost every Friday night sleepover throughout the four year period. Although not every witness pronounced Mr. Parker's guilt, the jury was able to view the witnesses and adjudge their credibility, and we must give their judgment deference. Moreover, there is ample evidence in the record that is indicative of guilt. Cally testified that Andrea would sleep fully clothed and under numerous layers of blankets (this behavior was inappropriate for the temperature) and that Andrea's personal hygiene deteriorated after she began spending Friday nights at her step-grandparents' home. Similarly, Cally testified that Amanda developed depression, severe lower abdominal pain and nightmares, as well as had difficulty in school; all of which began shortly after the Friday night sleepovers. Hence, after thoroughly reviewing the record, we conclude that there is no evidence that the jury clearly lost its way and created a manifest miscarriage of justice by convicting Mr. Parker; therefore, we hold that the jury's decision was not against the manifest weight of the evidence. Mr. Parker's second assignment of error is overruled.
C. Third Assignment of Error
THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO MERGE THE OFFENSES OF GROSS SEXUAL IMPOSITION AND FELONIOUS SEXUAL PENETRATION AND SENTENCING THE DEFENDANT UPON CONVICTION AS SUCH OFFENSES WERE ALLIED OFFENSES PURSUANT TO R.C. 2941.25.
Mr. Parker argues that the trial court erred by failing to merge the offenses of gross sexual imposition and felonious sexual penetration, pursuant to R.C. 2941.25. We disagree.
In pertinent part, R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In determining whether two crimes are allied offenses of similar import, the Ohio Supreme Court has stated:
 With its multiple-count statute Ohio intends to permit a defendant to be punished for multiple offenses of dissimilar import. R.C. 2941.25(B); State v. Blankenship (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817. If, however, a defendant's actions "can be construed to constitute two or more allied offenses of similar import," the defendant may be convicted (i.e. found guilty and punished) of only one. R.C. 2941.25(A). But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B). State v. Jones (1997), 78 Ohio St.3d 12, 13-14, 676 N.E.2d 80, 81.
 * * * The applicable test for deciding that issue is as follows: If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" Id. at 13, 676 N.E.2d at 81, quoting Blankenship, 38 Ohio St.3d at 117, 526 N.E.2d at 817. If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted. R.C. 2941.25(B). See, also, State v. Mughni (1987), 33 Ohio St.3d 65, 68, 514 N.E.2d 870, 873.
(Emphasis original.) State v. Rance (1999), 85 Ohio St.3d 632,636. Moreover, when comparing the elements of the offenses, the "elements should be compared in the statutory abstract." Id. at 637.
Thus, we must first decide whether in the abstract, the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, and therefore, the crimes are of similar import. Id. at 636. If they are offenses of similar import, then we must determine whether the defendant committed those offenses separately or with a separate animus. Id. If the offenses were committed separately or with a separate animus, the defendant may be punished for both offenses. Id. No one factor is dispositive in determining whether there were separate acts or animi. Statev. Jones (1997), 78 Ohio St.3d 12, 14.
In the case sub judice, Mr. Parker's failure to raise the issue of merger pursuant to R.C. 2941.25 before the trial court constitutes a waiver of that error. See State v. Comen (1990),50 Ohio St.3d 206, 211.
Assuming arguendo that Mr. Parker had not waived this claim, we find that these crimes do not constitute allied offenses of similar import in the present case. In the first step of our anaylsis, we conclude that the defendant may violate R.C. 2907.05
(gross sexual imposition) without violating R.C. 2907.12
(felonious sexual penetration), as the defendant may touch the erogenous zone of another with the purpose of sexual gratification without actually penetrating the vaginal or anal cavities. However, we find that the defendant may not violate R.C. 2907.12
(felonious sexual penetration) without also violating R.C. 2907.05
(gross sexual imposition), as the defendant must touch the erogenous zone of another in order to penetrate the victim's vaginal or anal cavities. See State v. Giles (July 14, 1994), Cuyahoga App. No. 65731, unreported, 1994 WL 372330, at *5-6. Therefore, we hold that the first part of the test for determining allied offenses of similar import is satisfied.
In the second step of our analysis, we conclude that the gross sexual imposition charges and the felonious sexual penetration charges were committed separately. If the crimes were committed separately, then Mr. Parker may be convicted of both offenses. See R.C. 2941.25(B). Mr. Parker was charged with two counts of gross sexual imposition per year and two counts of felonious sexual penetration per year for the time period between 1989 and 1991.[7] We find that there was ample evidence for the jury to conclude that on four separate Fridays during a single year, Mr. Parker committed the crimes of which he is charged (i.e. on one Friday, appellant committed felonious sexual penetration, and on another Friday, he committed gross sexual imposition). Hence, we conclude that as the crimes were committed separately, Mr. Parker was properly convicted of both gross sexual imposition and felonious sexual penetration. Accordingly Mr. Parker's third assignment of error is overruled.
D. Fourth Assignment of Error
THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF [sic] THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO [sic].
Mr. Parker argues that he was denied effective assistance of counsel, which is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution. Mr. Parker asserts that his trial counsel was ineffective because counsel: (1) failed to call an expert witness, (2) failed to request an in camera inspection of the alleged victim's prior statements, (3) failed to object to the prosecutor's questioning regarding the age of appellant's wife at the time of their marriage, (4) failed to request that the trial court merge the counts of gross sexual imposition and felonious sexual penetration, pursuant to R.C. 2941.25, and (5) failed to request a continuance, as Mr. Parker and his wife were suffering from depression at the time of trial, and thus, were unable to assist in Mr. Parker's defense. We disagree.
A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution. See McMann v. Richardson (1970), 397 U.S. 759, 771,25 L.Ed.2d 763, 773, fn. 14. A two-step process is employed in determining whether the right to effective assistance of counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693.
In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." See State v.DeNardis (Dec. 29, 1993), Medina App. No. 2245-M, unreported, at 4.
In the case at bar, appellant argues that he was denied the right to effective assistance of counsel when his attorney failed to call an expert witness at trial. Although defense counsel had procured an expert witness, the trial court precluded the defense from presenting any expert witness testimony or evidence, as defense counsel did not produce an expert report.[8] However, the Ohio Supreme Court has held that an attorney's "failure to call an expert and instead rely[ing] on cross-examination does not constitute ineffective assistance of counsel." State v. Nicholas
(1993), 66 Ohio St.3d 431, 436, citing State v. Thompson (1987),33 Ohio St.3d 1, 10-11. In the present case, the record clearly shows that Mr. Parker's counsel conducted an extensive and effective cross-examination of the state's expert witness, Jane Robertson. Appellant's counsel also questioned Ms. Robertson on the "validation process" and the various indicators of sexual abuse of children. Therefore, we conclude that defense counsel's failure to call an expert witness at trial did not constitute ineffective assistance of counsel, as Mr. Parker did not show that his counsel's performance was deficient or that there exists a reasonable probability that, but for his counsel's errors, the outcome of trial would have been different.
Second, Mr. Parker contends that he was denied effective assistance of counsel when his trial counsel failed to request anin camera inspection of the alleged victim's prior statements, and thus, counsel was unable to impeach Amanda's and Andrea's testimonies with their alleged prior inconsistent statements. Crim.R. 16(B)(1)(g) states in pertinent part:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
In the case at bar, Roma Parker testified that Amanda and Andrea had told her that the sexual abuse occurred in Mr. Parker's truck while he took the girls for pizza and candy. Mr. Parker claims that this testimony amounts to a prior statement within the meaning of Crim.R. 16(B)(1)(g) and that his counsel failed to request an in camera inspection pursuant to Crim.R. 16(B)(1)(g). However, the statements of Amanda and Andrea were neither written nor recorded, as the girls allegedly made these statements to Roma during a conversation about the abuse. See Crim.R. 16(B)(1)(g);State v. Allen (1990), 69 Ohio App.3d 366, 372. Moreover, the prosecutor recalled both Amanda and Andrea to testify and asked them whether or not they had ever told Roma that the abuse occurred in appellant's pickup truck. Both Amanda and Andrea denied ever telling Roma that the abuse occurred in the truck and further testified that the abuse only happened in appellant's house.[9] Defense counsel also cross-examined them regarding this subject. Thus, defense counsel had the opportunity to impeach Amanda and Andrea with the statements that they allegedly had made to Roma. Consequently, we conclude that as Amanda and Andrea's prior statements were neither written nor recorded within the meaning of Crim.R. 16(B)(1)(g) and since appellant's defense counsel had the opportunity to cross-examine these witnesses regarding their statements at trial, defense counsel's performance was not deficient and did not prejudice Mr. Parker's defense.
Mr. Parker also argues that he was denied the effective assistance of counsel when his attorney failed to object to the prosecutor's line of questioning regarding the age of appellant's wife at the time of their marriage.[10] Mr. Parker contends that the prosecutor was trying to show that he had a penchant for young girls. Generally, we must give great deference to an attorney's trial strategies:
 "[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted.)
State v. Sallie (1998), 81 Ohio St.3d 673, 674, quoting State v.Carter (1995), 72 Ohio St.3d 545, 558. It is well-settled that an attorney's "failure to make objections are `within the realm of trial tactics' and do not establish ineffective assistance of counsel." (Citations omitted.) State v. McCroskey (Apr. 2, 1997), Wayne App. No. 96CA0026, at 10; see, also, State v. Gumm
(1995), 73 Ohio St.3d 413, 428. In the case at bar, we find that defense counsel's failure to object to the testimony regarding the age of appellant's wife at the time of their marriage was within the realm of trial tactics, as Mr. Parker's counsel may not have wanted to call additional attention to the testimony by objecting. Therefore, we conclude that as we must give great deference to the strategic decisions of Mr. Parker's trial counsel, we find that trial counsel's performance was not deficient in the present case. However, assuming arguendo that counsel's performance was deficient by not objecting to the testimony, we adduce that the alleged deficient performance was not prejudicial to Mr. Parker's defense.
Next, appellant argues that he was denied the effective assistance of counsel when his trial counsel failed to request that the trial court merge the counts of gross sexual imposition and felonious sexual penetration pursuant to R.C. 2941.25. However, as previously noted, we find that these two crimes do not merge in the present case, and thus, we conclude that counsel's performance was not deficient in not requesting that the trial court merge these counts. Moreover, even if counsel's performance was deficient, counsel's performance did not prejudice the defense, as these counts do not merge.
Lastly, Mr. Parker contends that his counsel's failure to request a continuance on the grounds that Mr. Parker and his wife were suffering from depression at the time of trial, and thus could not effectively assist in appellant's defense, constitutes ineffective assistance of counsel. In Ohio, a person is "presumed to be competent to stand trial." R.C. 2945.37(G). However, a defendant may be deemed incompetent "[i]f, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense[.]"Id. Furthermore, "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." State v. Bock (1986), 28 Ohio St.3d 108,110. In the present case, Mr. Parker argues that his trial counsel should have asked for a continuance and raised the issue of competency, so that a hearing could be held on that issue. See R.C. 2945.37(B). We find, however, that even though appellant was hospitalized for treatment of clinical depression after being accused of sexually abusing his step-grandchildren, there was no evidence that Mr. Parker was incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense.[11] In fact, appellant was able to testify extensively at trial on his own behalf. We conclude that as there was no evidence that Mr. Parker was incompetent to stand trial, his trial counsel did not err in failing to ask for a continuance. Applying the Strickland standard to the present case, we conclude that Mr. Parker has neither established that his trial counsel's performance was deficient, nor has he shown that there exists a reasonable probability that the outcome of his trial would have been different but for his counsel's deficient performance. Accordingly, Mr. Parker's fourth assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM G. BATCHELDER FOR THE COURT
BAIRD, P.J., CARR, J., CONCUR
[1] Amanda and Andrea spent almost every Friday night at their step-grandparents' house, while Jason and Jessica spent every other Friday night, as they had visitation with their biological mother every other weekend.
[2] As Drew, Jr. and his family did not have a phone in their house, they would use Mr. Parker's phone, which was a cordless phone that could be used in Drew, Jr.'s home across the street. Roma had overheard some conversations between Amanda and some boys that were allegedly improper. As she was concerned, Roma told Cally, who then confronted Amanda about these telephone conversations. When Amanda was confronted, she then told her mother about the sexual abuse.
[3] Neither sister knew that the other was being abused while the abuse was occurring. According to their testimonies, they did not know about each other's abuse until the conversation with their mother in April 1997.
[4] Pursuant to the code provisions in effect at the time of the crimes, Mr. Parker was indicted for two counts of gross sexual imposition per year, per child (Amanda and Andrea) for the period between April 1, 1987 and July 31, 1991. Mr. Parker was also indicted for two counts of felonious sexual penetration of Amanda per year for the period between September 27, 1989 and July 31, 1991.
[5] The numbering of the code provision, R.C. 2907.05, changed on April 11, 1990; however, R.C. 2907.05(A)(3), as it existed prior to April 11, 1990, and R.C. 2907.05(A)(4), as it currently appears, have virtually identical language.
[6] R.C. 2907.12 was repealed on September 3, 1996.
[7] Mr. Parker was charged with these crimes for acts committed against Amanda.
[8] The trial court announced this ruling in a journal entry dated June 3, 1998.
[9] Drew, Jr.'s testimony confirmed Amanda and Andrea's testimony on the subject of the pickup truck.
[10] Roma was fourteen years old when she married appellant and twelve years old when they began dating, while appellant was nineteen years old when he began dating Roma.
[11] Regarding Mr. Parker's (the defendant's) competency to stand trial, Roma Parker's mental state is irrelevant.